[Cite as *Hill v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-561.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


Robert Hill,                                          :

       Plaintiff-Appellant,          :

v.                                                   :              No. 20AP-88
                                                                (Ct. of Cl. No. 2019-00632JD)
Ohio Department of Rehabilitation and                :
Correction,                                                       (REGULAR CALENDAR)

                                                     :
       Defendant-Appellee.

                                                     :


D E C I S I O N

Rendered on March 2, 2021


**On brief:** *Robert Hill*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *Stacy Hannan*.


APPEAL from the Court of Claims of Ohio

SADLER, J.

{¶ 1} Plaintiff-appellant, Robert Hill, appeals from a judgment of the Court of Claims of Ohio, in favor of defendant-appellee, Ohio Department of Rehabilitation and Corrections ("ODRC"). For the reasons that follow, we reverse.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On May 16, 2019, appellant, an inmate in the custody and control of ODRC, filed a complaint for damages against ODRC alleging defamation. According to the complaint, on June 13, 2018, ODRC Investigator, Jarred McGilton, "willfully and maliciously" published written statements in an inmate conduct report falsely accusing him of conspiring with inmate Adam Poulton to hide large quantities of Suboxone, a Schedule Three Controlled Substance, in the prison law library where appellant worked as an inmate

assistant. The complaint further alleges that as a result of the conduct report, he was found guilty of a violation of prison rules by appellee's Rules Infraction Board ("RIB"), removed from his position in the prison library, moved to the segregation unit, given a higher security level, and eventually transferred from Noble Correctional Institution ("NCI") to a more secure facility.

{¶ 3} On June 13, 2019, ODRC filed an answer to the complaint denying liability and asserting affirmative defenses, including qualified privilege. On August 30, 2019, ODRC filed a notice informing the Court of Claims that ODRC had served responses to appellant's request for production of documents, request for admissions, and interrogatories. In responding to appellant's discovery, ODRC asserted the following objection to several requests seeking information McGilton may have provided to the RIB panel:

> Objection. This request seeks documents that are confidential, privileged, and cannot be disclosed for security reasons. *See* ODRC Policy 09-INV-04. Specifically, this request seeks information, the production of which, would disclose confidential investigatory procedures, methods, and techniques that were used throughout a two-year investigation of a drug network inside NCI. Such investigatory methods are used in similar investigations throughout ODRC.
>
> Without waiving these and other objections, see the non-confidential portion of the investigative file, attached. This includes the Conduct Report, disposition of Rules Infraction Board, Warden's Decision on Appeal. See also the audio recording of the RIB hearing, provided to Plaintiff's institution.

(Def.'s Resp. to Admissions and Production of Documents at 7, attached to Oct. 28, 2019 Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. Jgmt.)

{¶ 4} ODRC Policy 09-INV-04, is grounded on the statutory privilege set forth in R.C. 5120.21 which provides in relevant part as follows:

> (D) Except as otherwise provided by a law of this state or the United States, the department and the officers of its institutions shall keep confidential and accessible only to its employees, except by the consent of the department or the order of a judge of a court of record, all of the following:
>
> * * *

(3) Statements made by inmate informants[.]

{¶ 5} On September 16, 2019, ODRC filed a motion for summary judgment arguing they were shielded from liability in defamation for any false statements made by McGilton in the conduct report due to the existence of a qualified privilege. In support of the motion, appellee submitted McGilton's affidavit, which provides in relevant part as follows:

> 3. In 2016, NCI started an investigation regarding an illegal drug conveyance network facilitated by inmate Adam Poulton. Utilizing confidential sources, video surveillance, GTL phone monitoring, and JPay communications, it was discovered that inmate Poulton was coordinating the conveyance, distribution, and sales of illegal drugs for profit within NCI.
>
> Poulton would have the drugs conveyed into NCI, then distribute the drugs amongst multiple inmates, all of whom would receive profit from the sale of the drugs. As a result of my investigation, Poulton was criminally convicted of Complicity (illegal conveyance of prohibited items onto the grounds of a detention facility), a third degree felony. Poulton was sentenced to nine months in prison. See *State of Ohio v. Adam Poulton*, Noble Co. C.P. No. 218-2046 (J. John W. Nau).
>
> 4. Inmate Hill was assigned to NCI's law library. Video evidence and confidential sources suggested Hill would not only assist Poulton in hiding large quantities of Suboxone, a Schedule Three Controlled Substance, inside the law library, but also helped facilitate meetings of individuals involved in the conveyance network.
>
> 5. As a result of this investigation I wrote a conduct report on Hill, charging him with a violation of Rule 40 (Procuring or attempting to procure, unauthorized drugs; aiding, soliciting, or collaborating with another to procure unauthorized drugs or to introduce unauthorized drugs into a correctional facility). A conduct report is a document used by ODRC to memorialize that an inmate has violated one or more of the inmate rules of conduct that are set forth in Ohio Administrative Code Section 5120-9-06. A true and accurate copy of the conduct report is attached to this affidavit as Ex. A-1. This report contains an accurate description of the findings of our investigation. The information in the conduct report is truthful to the best of my knowledge.
>
> 6. On or about June 13, 2018, NCI's Rules Infraction Board held a hearing regarding the allegations in my conduct report.

> The Board found Hill Guilty of violating Rule 40 as a result of this hearing. A true and accurate copy of the Disposition of the Rules Infraction Board is attached to this affidavit as Ex. A-2. The information I provided to the Board is true and accurate to the best of my knowledge.

(McGilton Aff. at 1-2, attached to Sept. 16, 2019 Def.'s Mot. for Summ. Jgmt.)

{¶ 6} On September 17, 2019, the Court of Claims issued an order scheduling a non-oral hearing on the motion for October 22, 2019. On September 26, 2019, appellant filed a motion to strike ODRC's motion for summary judgment for lack of service upon appellant and, in the alternative, an extension of time to respond to the motion.

{¶ 7} On October 7, 2019, appellant filed a combined motion for an order requiring ODRC to submit documents responsive to his request for production to the Court of Claims for an in camera review to determine whether any of the allegedly privileged documents could be disclosed. Appellant also moved the Court of Claims to compel ODRC to respond to certain requests for admission for which appellant had also asserted a statutory privilege. On that same date, appellant filed a motion for an order holding ODRC's motion for summary judgment in abeyance until such time as the court ruled on his motion for an in camera review and to compel discovery.

{¶ 8} On October 24, 2019, a court magistrate issued an order denying appellant's discovery-related motions. Though the magistrate also denied appellant's request to hold the summary judgment motion in abeyance, the magistrate did grant appellant leave to file his memorandum in opposition to summary judgment on or before November 12, 2019.

{¶ 9} On November 4, 2019, appellant filed both a motion to set aside the magistrate's October 24, 2019 order and a motion to compel responses to his second request for admissions. Appellant also filed a motion to continue the non-oral hearing on the motion for summary judgment. On November 22, 2019, the Court of Claims concluded that R.C. 5120.21(D) protected any responsive documents from disclosure, denied appellant's motion to set aside the magistrate's order, and refused to conduct an in camera inspection. On December 17, 2019, the Court of Claims also denied appellant's November 14, 2019 motion to compel responses to his second set of requests for admission.

{¶ 10} Following a non-oral hearing, the Court of Claims issued a decision and judgment entry on January 27, 2020, granting ODRC's motion for summary judgment and mooting appellant's pending motions.[1]

{¶ 11} Appellant timely filed a notice of appeal to this court from the judgment of the Court of Claims. Appellant subsequently filed a motion for relief from judgment in the Court of Claims, and on March 17, 2020, this court granted appellant's March 4, 2020 motion to stay the appeal. In our March 17, 2020 entry, we remanded the matter to the Court of Claims "for the limited purpose of allowing that court to rule upon appellant's pending motion for relief from judgment." *Hill v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-88 (Mar. 17, 2020) (Journal Entry). The Court of Claims subsequently denied appellant's Civ.R. 60(B) motion and we re-activated this appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Appellant assigns the following as trial court error:

> 1. THE TRIAL COURT ERRED IN GRANTING DEFENDANT OHIO DEPARTMENT OF REHABILITATION AND CORRECTION SUMMARY JUDGMENT.
>
> 2. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT IN CAMERA INSPECT (sic) OF CONFIDENTIAL INFORMANT STATEMENT.
>
> 3. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO COMPEL LIEUTENANT HIATT TO RESPOND TO REQUEST FOR ADMISSION NOS. 26, 27, AND 28.

---

[1] The Court of Claims ruling on the pending discovery motions is as follows:

> [O]n December 27, 2019, plaintiff filed a document captioned "Plaintiff Robert Hill's Motion for Leave to Compel Production of Video & Prographs (sic) for Inspection." Plaintiff requests that the court compel ODRC to provide him with "video, photographs, and/or stile photographs for inspection" pursuant to Civ.R. 37. Plaintiff states that he sent ODRC a request for production of documents in July of 2019. Plaintiff avers that ODRC responded by objecting to the request. On January 8, 2020, ODRC filed a response wherein it agreed to make the video available for plaintiff's inspection. Therefore, plaintiff's motion is DENIED as moot.

(Jan. 27, 2020 Decision at 1.)

4. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S CIV.R. 60(B) MOTION.

## III. STANDARD OF REVIEW

{¶ 13} "Summary judgment under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion." *Nalluri v. Jones*, 10th Dist. No. 19AP-779, 2020-Ohio-4280, ¶ 13, citing *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). The moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory allegations that the nonmoving party has no evidence to prove its case. *Nalluri* at ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Rather, the moving party must point to some evidence that affirmatively demonstrates the nonmoving party has no evidence to support each element of the stated claims. *Id.* " '[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' " *Nalluri* at ¶ 13, quoting *Dresher* at 293.

{¶ 14} An appellate court's review of summary judgment is de novo. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. "Thus, we conduct an independent review of the record and stand in the shoes of the trial court." *Nalluri* at ¶ 14, citing *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist.). Our review permits no deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

## IV. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 15} In appellant's first assignment of error, appellant contends that the Court of Claims erred when it granted summary judgment to ODRC on his defamation claim. We agree.

{¶ 16} "In Ohio, defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.' " *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7 (1995). "If a claimant establishes a prima facie case of defamation, a defendant may then invoke a conditional or qualified privilege." *Jackson* at ¶ 9, citing *A & B-Abell* at 7, citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 243 (1975).

{¶ 17} "A qualified privilege is an affirmative defense to a claim of defamation." *Morrison v. Gugle*, 142 Ohio App.3d 244, 258 (10th Dist.2001), citing *Cooper v. Baptist Church of Columbus, Ohio, Inc.*, 81 Ohio App.3d 728, 734 (10th Dist.1992), citing *Hahn* at 243. The Supreme Court of Ohio in *Jackson* set out the essential elements of a conditionally or qualifiedly privileged communication as follows: (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, and (4) a proper occasion, and publication in a proper manner and to proper parties only. *Id.* at ¶ 9, quoting *Hahn* at 246. A qualified privilege shields the defamer from liability to plaintiff where "society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection." *A & B-Abell* at 8. Once established, a qualified privilege can be defeated by a clear and convincing showing that the communication was made with actual malice. *A & B-Abell* at 11.

{¶ 18} Appellee's reliance on the affirmative defense of qualified privilege in support of its motion for summary judgment meant that the Court of Claims, in ruling on the motion, assumed the falsity of the accusatory statements made by McGilton in the conduct report. Accordingly, it was appellee's burden to produce evidence to support the essential elements of the qualified privilege. *Utz v. Stovall*, 11th Dist. No. 2012-P-0135, 2013-Ohio-4299. Because the Court of Claims determined that ODRC established the elements of a qualified privilege, as a matter of law, including the element of good faith, the decision in the Court of Claims focused on the issue of actual malice.

{¶ 19} "[A] qualified privilege may be defeated * * * if a claimant proves with convincing clarity that a publisher acted with actual malice." *Jackson* at ¶ 9, citing *Jacobs v. Frank*, 60 Ohio St.3d 111 (1991), paragraph two of the syllabus. "In a qualified privilege

case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity."  *Jacobs* at paragraph two of the syllabus.   The phrase "reckless disregard" applies when a publisher of defamatory statements acts with a "high degree of awareness of their probable falsity" or when the publisher "in fact entertained serious doubts as to the truth of his publication."  (Internal citations omitted.)  *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 10. Evidence that establishes, at best, the publisher "should have known" of the alleged falsity of the statement is insufficient to establish actual malice.  *Varanese v. Gall*, 35 Ohio St.3d 78, 82 (1988).  "[M]ere negligence is constitutionally insufficient to show actual malice." *Id.*, citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119 (1980).

{¶ 20}  In reviewing the relevant evidence presented to the Court of Claims, we are aided by Ohio Adm.Code 5120-9-08 which sets forth the disciplinary procedures to be followed when violations of inmate rules of conduct are alleged.  That section contains the following relevant provisions regarding the RIB hearing:

> (D) Hearing to be recorded. With the exception of deliberations concerning guilt or the imposition of penalties, the proceedings shall be recorded using suitable electronic means. The recording of the proceedings shall commence upon the inmate's appearance before the RIB panel. In addition to the electronic record, the record of the proceedings shall also include any document, video, confidential information or other evidence presented to the RIB, as well as any written requests, waivers and statement summaries.
>
> * * *
>
> (G) *Confidential information. If the RIB panel uses information from a confidential source in its determination, the panel shall evaluate the credibility of the confidential source prior to reaching a decision on the rule violation. The RIB shall also determine whether the statement is confidential in its entirety or if any of the information can be disclosed to the inmate charged with the violation without disclosing the identity or jeopardizing the safety of the confidential source. The inmate charged with the offense shall not be present when the RIB considers and evaluates the confidential information. The panel shall record its evaluation on the appropriate form.*

* * *

(M) Documentation of disposition. Upon completing its deliberations, the RIB shall orally inform the inmate of its decision and disposition, as part of the electronic record. *The RIB secretary shall complete a disposition form, which shall contain the determination made by the panel regarding each rule violation, the factual basis of the determination, names of witnesses, and any disposition imposed.*

*(1) The form shall also include whether the panel relied on confidential information in reaching its determination and the panel's evaluation of the informant's credibility. The form shall not contain the name of any confidential informant or the nature of the confidential information.*

(Emphasis added.) Ohio Adm.Code 5120-9-08.

{¶ 21} Because ODRC's motion for summary judgment was predicated on the existence of a qualified privilege, the focus of our review is the quality of the information McGilton relied on in making the allegedly false and defamatory statements in the conduct report.  McGilton's accusations against appellant are as follows:

Inmate Poulton was observed in the law library and recreation building meeting on a regular basis with individuals involved in the illegal drug operation. Multiple inmates assisted by collection of, conveyance of, hiding, holding, and dealing the illegal drugs, to include collection of monies. * * *

Inmate Hill A614862 was assigned to the Law Library. *Video evidence and confidential sources suggest Hill would not only assist inmate Poulton in hiding large quantities of Suboxone, a Schedule Three Controlled Substance, inside of the Law Library, but also helped facilitate meetings of individuals involved in the conveyance network.* All information relative to this case will be kept in the Investigator's case files.

(Emphasis added.) (McGilton Aff. at Ex. A-1, attached to Sept. 16, 2019 Def.'s Mot. for Summ. Jgmt.)[2]

{¶ 22} According to McGilton's conduct report, the accusations regarding appellant's involvement in inmate Poulton's drug ring at NCI are based upon "video evidence and confidential sources."  In support of the motion for summary judgment,

---

[2] The conduct report identifies six other alleged co-conspirators of Inmate Poulton by name and inmate number.

ODRC submitted a copy of the RIB disposition sheet that was completed after appellant's RIB hearing. *See* McGilton affidavit at Ex. A-2. The form entitled "Disposition of the Rules Infraction Board," asks RIB to "[s]tate the facts that explain the board's decision?" RIB responded: "THE BOARD BELIEVES THE INMATE WAS INVOLVED IN A LARGE CONVEYANCE AND DISTRIBUTION DRUG RING AT NCI." (Emphasis sic.) (McGilton Aff. at Ex. A-2.) The form goes on to ask RIB to identify the "[p]articular evidence or statements relied on," to which RIB responds: "CONDUCT REPORT, MR. MCGILTON PARTIAL TESTIMONY OF THE INMATE." (Emphasis sic.) (McGilton Aff. at Ex. A-2.)

{¶ 23} Appellant argued in the Court of Claims that an issue of fact existed whether McGilton knew his allegations against appellant were false because the RIB disposition sheet shows that McGilton did not produce any video evidence or information from a confidential source at the RIB hearing to support the false and defamatory statements he made in his conduct report. We agree.

{¶ 24} The RIB disposition sheet does not indicate that RIB relied on any confidential information in reaching its decision. Nor does the disposition sheet contain any indication that RIB evaluated the credibility of any confidential informant in determining the truth of McGilton's accusations. Based on the disposition sheet, it is permissible to infer that McGilton did not provide RIB with any information from a confidential source that would support the accusations against appellant in McGilton's conduct report. Had RIB relied on any such information, Ohio Adm.Code 5120-9-08(G) and (M) required RIB to specify the confidential information upon which it relied and document the panel's credibility assessment of any confidential informant. Though McGilton averred in his affidavit that he provided his entire investigation file to RIB, the RIB disposition sheet does not indicate reliance on any confidential sources.

{¶ 25} Similarly, the RIB disposition sheet does not specify that it relied on video evidence in reaching its decision. Had video evidence been submitted to RIB, and had that video evidence provided RIB with a "factual basis of the determination," the disposition sheet would so indicate. *See* Ohio Adm.Code 5120-9-08(M).[3] We further note that in

---

[3] In ODRC's response to appellant's request for admissions, ODRC also admitted that RIB Chairperson, Lieutenant Hiatt, has never been in possession of "audio recordings of Plaintiff's conversations with Inmate Poulton #A686-056." (Def.'s Resp. to Admissions and Production of Documents at 13.) Furthermore, appellant's request for admissions asked ODRC to admit that he has never been in possession of "telephone

responding to appellant's request for admissions, ODRC admitted that RIB Chairperson, Lieutenant Haitt, has never been in possession of "video footage of Plaintiff and Inmate Poulton #A686-056 or anyone else whom came in contact with Plaintiff, showing drugs being passed to one another, handled, or holding drugs." (McGilton Aff. at Ex. A-1.) Thus, the evidence produced by appellant in opposition to ODRC's motion for summary judgment arguably contradicts McGilton's statement that video evidence "suggests [appellant] would not only assist inmate Poulton in hiding large quantities of Suboxone, a Schedule Three Controlled Substance, inside of the Law Library, but also helped facilitate meetings of individuals involved in the conveyance network.*"* (McGilton Aff. at Ex. A-1.)

{¶ 26} Based upon appellant's affidavit, the RIB disposition sheet, and ODRC's responses to appellant's request for admissions, it is permissible to infer that McGilton did not have any video evidence or any information from confidential sources to support the statements in the conduct report accusing appellant of complicity in the drug ring. In the absence of any evidentiary support for McGilton's charges against appellant, a genuine factual issue arises whether McGilton published the defamatory statements in the conduct report either with knowledge that the statements were false or with reckless disregard as to their truth or falsity.

{¶ 27} In granting summary judgment for appellee, the Court of Claims nevertheless concluded that the averments in appellant's affidavit to the contrary were "self-serving" and not worthy of belief. The Court of Claims decision provides in relevant part as follows:

> Plaintiffs statement in his affidavit that McGilton "did, purposely, with actual malice write the June 13, 2018 conduct report being aware of the high probability of falsity * * *" is not based on personal knowledge and is not corroborated. * * * Plaintiff offers no details, other than his own self-serving statements, supporting the basis for his knowledge of what McGilton knew and thought. Similarly, plaintiff offers no support for his assertion that McGilton possesses no confidential sources. Plaintiff has failed to produce facts that

recordings or JPay Communication of Plaintiff's at which Plaintiff is conversing about drugs, conveying drugs, having funds sent or picked by a third person for drugs." (Def.'s Resp. to Admissions and Production of Documents at 13.) Though ODRC objected to the interrogatory as "vague and misleading," ODRC did admit that it never had possession of "telephone recordings or JPay Communication of Plaintiff's at which Plaintiff is conversing about drugs, conveying drugs, having funds sent or picked by a third person for drugs." (Def.'s Resp. to Admissions and Production of Documents at 13.)

> McGilton acted with malice when he wrote the conduct report. * * *
>
> * * *
>
> Plaintiff's self-serving conclusory affidavit, absent corroborating evidence, is insufficient to create a genuine issue of material fact. Based upon the unrebutted affidavit testimony of Jared McGilton, the only reasonable conclusion to draw is that the statements contained in the conduct report were not made with "actual malice" and are protected by a qualified privilege. Accordingly, ODRC's motion shall be granted.

 (Jan. 27, 2020 Decision at 9-10.)

{¶ 28} In disregarding the averments in appellant's affidavit as "self-serving," the Court of Claims cited a prior decision of this court in *White v. Sears*, 10th Dist. No. 10AP-294, 2011-Ohio-204. The *White* case is clearly distinguishable. In *White*, a former employee sued his employer for breach of contract alleging that the employer had an unwritten policy requiring severance pay upon termination. The employee's claims were in direct contravention of the employer's written policies and procedures submitted by the employer in support of the employer's summary judgment motion. This court affirmed summary judgment for the employer on finding that the employee's uncorroborated averments regarding an unwritten policy were insufficient, as a matter of law, to create a genuine factual issue in light of the written policies and procedures. *Id.* at ¶ 8.

{¶ 29} This case has nothing to do with the proof of an oral agreement or an attempt by appellant to contradict a written agreement. Rather, appellant's affidavit and the above-cited corroborating evidence contradict averments in McGilton's affidavit. Thus, the rule of law announced in *White* would not permit the Court of Claims to disregard appellant's affidavit.[4]

{¶ 30} The Court of Claims also cited a prior decision of this court in *Watley v. Ohio Dept. of Rehab. and Corr.*, 10th Dist. No. 07AP-902, 2008-Ohio-3691 for the proposition that the uncorroborated averments of a claimant's affidavit are insufficient, as a matter of

---

[4] In *Bay v. Brentlinger Enters.*, 10th Dist. No. 15AP-1156, 2016-Ohio-5115, ¶ 28, we cautioned that the *White* decision should be limited to the particular facts of the case ("There is no precedent for extending [the] holding [in *White*] to allow evidence or an affidavit to be stricken simply because it may contain self-serving assertions.").

law, to overcome a publisher's claim of qualified privilege in a defamation case. *Watley* is also distinguishable.

{¶ 31} In *Watley*, an inmate sued ODRC in the Court of Claims alleging that a corrections officer filed a false and defamatory conduct report alleging he had fought with another inmate. ODRC moved the Court of Claims for summary judgment based upon a claim of qualified privilege. In opposition to the motion, the inmate relied exclusively on his own affidavit wherein he claimed that the corrections officer maliciously submitted the false conduct report. A panel from this court affirmed the summary judgment in favor of ODRC upon finding that the inmate's uncorroborated allegation of malice was insufficient, as a matter of law, to meet his burden of proof on that issue. *Id.* at ¶ 34.

{¶ 32} Because the facts of this case are decidedly different than those presented to this court in *Watley*, a different result is required. Here, the pertinent averments in appellant's affidavit are consistent with the RIB disposition sheet, which is silent with regard to the existence of any information from confidential sources implicating appellant in the drug ring at NCI. Appellant's affidavit is also corroborated by ODRC's answers to his request for admissions, wherein ODRC admits that McGilton did not produce video evidence at the RIB hearing directly implicating appellant in the drug ring at NCI. Appellant also produced the affidavit of inmate Poulton, who averred that appellant was not involved in his illegal drug ring at NCI. Based on Poulton's affidavit, it is reasonable to conclude that Poulton was not a source of information upon which McGilton relied in stating that appellant "would not only assist inmate Poulton in hiding large quantities of Suboxone, a Schedule Three Controlled Substance, inside of the Law Library, but also helped facilitate meetings of individuals involved in the conveyance network." (McGilton Aff. at Ex. A-1.) Contrary to the determination of the Court of Claims, appellant's affidavit was not the only evidence relied upon by appellant to prove actual malice.

{¶ 33} The Court of Claims also concluded that McGilton submitted unrebutted affidavit testimony, even though the RIB disposition sheet and ODRC's responses to appellant's discovery requests contradict McGilton's averment that "[v]ideo evidence and confidential sources suggested Hill would not only assist Poulton in hiding large quantities of Suboxone, a Schedule Three Controlled Substance, inside the Law Library, but also helped facilitate meetings of individuals involved in the conveyance network." (McGilton

Aff. at Ex. A-1.)   Accordingly, on this record, we find that the Court of Claims erred by disregarding certain averments in appellant's affidavit as "self-serving."   Furthermore, by accepting the averments in McGilton's affidavit as true, the Court of Claims failed to construe the evidence in appellant's favor, as it was required to do in ruling on ODRC's motion for summary judgment.   *Jackson* at ¶ 10, quoting *Dupler*, 60 Ohio St.2d at paragraph one of the syllabus (Even though plaintiff shoulders a heightened burden of proof on the issue of actual malice in a defamation case, in reviewing a summary judgment in favor of a publisher, an appellate court " 'shall consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff to determine whether a reasonable [trier of fact] could find actual malice with convincing clarity.' ").

{¶ 34}  Upon review of the evidence produced in connection with the motion for summary judgment, and construing such evidence in appellant's favor, we find there is a disputed issue of fact whether McGilton published the conduct report with actual malice. Accordingly, we hold that the Court of Claims erred when it granted ODRC's motion for summary judgment based upon a claim of qualified privilege.  Appellant's first assignment of error is sustained.

## B. Third Assignment of Error

{¶ 35}  For purposes of clarity, we will address appellant's third assignment of error out of order.   In appellant's third assignment of error, appellant argues that the Court of Claims erred when it refused to compel ODRC to respond to certain requests for admission. We agree.

{¶ 36}  "Appellate courts generally review a discovery dispute under an abuse-of-discretion standard, but if the dispute involves an alleged privilege, it is a question of law, subject to de novo review."  *Friedenberg v. Friedenberg*, __ Ohio St.3d __, 2020-Ohio-3345, ¶ 22, citing *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 13. In appellant's second set of requests for admission, appellant directed the following requests to RIB Chairperson Hiatt:

> 26. Before, during or after the June 13, 2018 RIB hearing, McGilton provided you with a statement from a confidential source alleging as fact that Inmate Hill #A614-862 held or hide drug in the law library for Inmate Poulton #A686-056.

27. The confidential statement alleges that the confidential source eye witness inmate Hill #A614-862 in possession of drugs.

28. The statement alleges that the confidential source eye witnessed Inmate Hill #A614-862 in possession of drugs hiding the drugs in the law library.

(Sic passim.) (Ex. A at 8-9, attached to Pl.'s Mot. to Compel.)

{¶ 37} To each of these three requests, ODRC responded as follows:

RESPONSE: Objection. This request calls for information that is irrelevant as the Court of Claims lacks subject matter jurisdiction to overturn an institution's RIB disposition. *Further, this request calls for information that is confidential, privileged and cannot be disclosed for security reasons. See 09-INV-04.* Without waiving these and other objections, ODRC admits that it provided the RIB with the evidence and information contained in the confidential case file.

(Emphasis added.) (Ex. A at 8-9, attached to Pl.'s Mot. to Compel.)

{¶ 38} In denying appellant's motion to compel, the Court of Claims found as follows:

In the instant motion, plaintiff attempts to clarify that he does not seek to uncover the identities of informants, but rather he wants to know when the statements were provided to the investigator and whether the informants "eye witnessed" plaintiff engage in drug activity (i.e., whether the informant observed plaintiff directly). (Plaintiff's December 26, 2019 Motion, p. 2-3.) Plaintiff's clarification, however, does not render the confidential information discoverable. To the contrary, it supports the need for confidentiality; knowledge of when the statements were made to the investigator and whether the informants directly observed plaintiff engage in drug activity could allow plaintiff to narrow down a list of possible informants.

(Jan. 27, 2020 Entry at 2.)

{¶ 39} As noted in our discussion of appellant's first assignment of error, the RIB disposition sheet does not indicate that RIB relied on any information from a confidential source in reaching its decision. Consequently, the RIB disposition sheet contains no determination by RIB whether any statement from a confidential source may be disclosed to appellant. *See* Ohio Adm.Code 5120-9-08(G). The Court of Claims determined that

appellant's requests for admission were objectionable under R.C. 5120.21 because disclosing whether a confidential informant was an eyewitness to appellant's involvement in the drug ring and disclosing the point in time when the confidential informant provided a statement to McGilton would "allow plaintiff to narrow down the list of possible informants." (Jan. 27, 2020 Entry at 2.) In our view, however, the reasoning employed by the Court of Claims does not justify ODRC's refusal to fully respond to request No. 26. Request No. 26 merely asks ODRC to admit or deny McGilton provided RIB with a statement from a confidential source "alleging as fact that [appellant] held or hide (sic) drug in the law library for Inmate Poulton." (Ex. A at 8, attached to Pl.'s Mot. to Compel.) Contrary to the conclusion of the Court of Claims, request No. 26 does not ask ODRC to admit or deny the confidential source is an "eye witness." Nor does it ask ODRC to reveal when the statement from a confidential source was provided to McGilton. Rather, the request merely asks ODRC to admit or deny McGilton provided the statement to RIB Chairperson, Lieutenant Hiatt "[b]efore, during or after the June 13, 2018 RIB hearing." (Ex. A at 8-9, attached to Pl.'s Mot. to Compel.)

{¶ 40} Our independent review of the record reveals no support for the conclusion that a response to request No. 26 would "allow plaintiff to narrow down a list of possible informants." (Jan. 27, 2020 Entry at 2.) Even if ODRC were to admit McGilton provided Lieutenant Hiatt with a statement from a confidential source alleging appellant held or hid drugs in the law library for inmate Poulton, the list of possible informants would remain the same. As previously noted, McGilton's conduct report reveals the names and inmate numbers of the six other inmates allegedly involved in the illegal drug ring with Poulton and appellant.

{¶ 41} Based on the foregoing, we hold that the Court of Claims erred when it denied appellant's motion to compel ODRC to admit or deny request No. 26. Because ODRC has yet to admit or deny whether McGilton provided a statement from a confidential source to RIB, any review by this court of ODRC's objection to requests for admission Nos. 27 and 28 would be premature. Accordingly, appellant's third assignment of error is sustained in part, and mooted in part.

### C. Second Assignment of Error

{¶ 42} In appellant's second assignment of error, appellant contends that the Court of Claims erred when it refused to conduct an in camera inspection of any statement from a confidential source McGilton provided to RIB. Having determined, however, that the Court of Claims erred when it denied appellant's motion to compel ODRC to either admit or deny any such statement exists, a ruling by this court on appellant's second assignment of error would be premature. Should ODRC admit, on remand, that McGilton provided RIB with a statement from a confidential source, the Court of Claims will have the opportunity to take up the issue anew.

{¶ 43} Accordingly, we dismiss appellant's second assignment of error. *Vega v. Tivurcio*, 10th Dist. No. 14AP-327, 2014-Ohio-4588, ¶ 32.

### D. Fourth Assignment of Error

{¶ 44} On May 17, 2020, this court issued an entry granting appellant's March 4, 2020 motion for a stay of this appeal and we remanded the matter to the Court of Claims "for the limited purpose of allowing that court to rule upon appellant's pending motion for relief from judgment." *Hill*, 10th Dist. No. 20AP-88 (Mar. 17, 2020) (Journal Entry). On April 2, 2021, the Court of Claims denied appellant's motion.

{¶ 45} Because we are reversing the judgment of the Court of Claims and remanding this case for further proceedings, we need not address appellant's challenge to the ruling on his motion to vacate that judgment. Accordingly, appellant's fourth assignment of error is moot. App.R. 12(A)(1)(c).

## V. CONCLUSION

{¶ 46} For the foregoing reasons, we have sustained appellant's first assignment of error, and we have sustained appellant's third assignment of error in part, and mooted it in part. We have also dismissed appellant's second assignment of error, and mooted appellant's fourth assignment of error. Accordingly, we reverse the judgment of the Court of Claims of Ohio and remand this matter for further proceedings consistent with this decision.

*Judgment reversed and remanded.*

BROWN and KLATT, JJ., concur.

_____