[Cite as *Bremar v. Ohio Univ.*, 2022-Ohio-1382.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Aaron Bremar, | : | |
| Plaintiff-Appellant, | : | No. 20AP-513 |
| | | (Ct. of Cl. No. 2020-00193JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio University, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N
Rendered on April 26, 2022

**On brief:** *Holmes Legal Services LLC*, and *Thomas C. Holmes*, for appellant. **Argued:** *Thomas C. Holmes.*

**On brief:** *Dave Yost*, Attorney General, *Lee Ann Rabe*, and *Jeanna Jacobus*, for appellee. **Argued:** *Jeanna V. Jacobus.*

APPEAL from the Court of Claims of Ohio

JAMISON, J.

{¶ 1} Plaintiff-appellant, Aaron Bremar, appeals from a judgment of the Court of Claims of Ohio, in favor of defendant-appellee, Ohio University. For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On March 19, 2020, appellant filed a complaint against appellee alleging that he had been dismissed from appellee's College of Health Sciences and Professionals in violation of the parties' agreement. Appellant filed an amended complaint on April 20, 2020. The amended complaint asserts three causes of action against appellee, breach of contract, negligence, and intentional infliction of emotional distress. Appellant also sought an order from the court of claims that several of appellee's employees were not entitled to personal immunity.

{¶ 3}   On April 6, 2020, appellee filed a motion to dismiss the amended complaint, pursuant to Civ.R. 12(B)(6), or in the alternative, summary judgment, pursuant to Civ.R. 56(B).  In the motion, appellee argues that appellant failed to commence his action within the applicable statute of limitations.  The court of claims notified the parties that it intended to treat the motion as a motion for summary judgment.

{¶ 4}   In support of the motion for summary judgment, appellee submitted the affidavit of Melissa Bowlby, Program Director at the Ohio University College of Health Sciences Professions, Physician Assistant Practice Program.  Bowlby was also appellant's assigned faculty advisor.  The following documents were attached to the affidavit: (1) "a true and accurate copy of the February 2, 2018 letter I provided to Aaron Bremar dismissing him from the Program," and (2) "a true and accurate" copy of appellee's 2018 "College of Health Sciences and Professions Grade and Disciplinary Appeals: College Policy and Procedure."  (Aff. of Melissa Bowlby, Ex. B at 1.)  Bowlby averred that the attached documents were "kept in the course of regularly conducted College activity and it was the regular practice of the College to make such a policy."  (Aff. of Melissa Bowlby at 1.)

{¶ 5}   The amended complaint identifies the relevant events and the dates of occurrence for purposes of appellee's statute of limitations defense.  In the amended complaint, appellant alleges that in May 2016 he enrolled as a student in appellee's Physician Assistant Practice Program ("Program"), for the purpose of obtaining a master's degree.  (Apr. 20, 2020 Am. Compl. at 2.)  The parties agree that their contractual relationship was governed by the College of Health Sciences and Professions Grade and Disciplinary Appeals: College Policy and Procedure ("Manual").

{¶ 6}   According to the amended complaint, students in the program were required to participate in monthly clinical rotations and electronically log the clinical cases and duty hours completed during clinical rotations.  (Am. Compl. at 3.)  On November 16, 2017, appellant informed program staff that he would not be able to timely log some of his clinical rotation duty hours.  On November 17, 2017, appellee informed appellant he would not be permitted to log those duty hours late.  (Am. Compl. at 4.)

{¶ 7}   On January 29, 2018, appellant met with Bowlby and several other program faculty members.  Appellant fielded questions at the meeting about the completion of his program requirements, including the number of duty hours he logged for his January 2018

clinical rotation. (Am. Compl. at 6.) Following the meeting, appellant was informed that he failed his January 2018 clinical rotation and needed to repeat it. *Id.* In the amended complaint, appellant admits that he signed a Disciplinary Notification letter at the conclusion of this meeting. The letter contains appellant's acknowledgment that he engaged in "Academic Dishonesty" and "Insufficient Rotation Experience" with regard to his January 2018 rotation. *Id.*

{¶ 8} On February 2, 2018, Bowlby, and several other faculty members, orally informed appellant that repeating his January 2018 clinical rotation was "no longer an option" and that appellee's Student Progress Committee ("SPC") had recommended his dismissal from the program. (Am. Compl. at 7.) Appellant was given the option to voluntarily withdraw from the program, but he refused. Bowlby then presented appellant with a letter notifying him of SPC's recommendation. *Id.* The February 2, 2018, letter was signed by Bowlby in her capacity as Program Director, and reads in relevant part as follows:

> The Student Progress Committee performed a careful and thoughtful review of the documentation provided at the meeting on January 29, 2018. SPC then discussed the matter in depth, examined all of [the] evidence, and made a decision about your standing in the program. *The recommendation made by the Student Progress Committee is dismissal from the Ohio University Physician Assistant Program effective February 2, 2018.*
>
> According to the Ohio University PA Program Policy Manual, grounds for dismissal from the PA program include both "lapses in professionalism" and "lapses in academic integrity, especially involving honesty and cheating." The policy manual also states that dishonesty and knowingly furnishing false information to faculty members are breaches of integrity and are regarded as serious offenses, which can result in dismissal, even on a first offense.
>
> * * *
>
> *You may appeal this decision according to the process that is outlined in the College of Health Sciences and Professions.*

(Emphasis added.) (Aff. of Melissa Bowlby, Ex. A at 1.)

{¶ 9} Appellant's amended complaint alleges that he availed himself of his contractual right of appeal to the Dean of the College of Health Sciences and Professions, Randy Leite. The amended complaint further alleges that on May 16, 2018, Dean Leite

denied appellant's appeal, and for the reasons set forth in the February 2, 2018 letter, dismissed appellant from the program. Appellant filed his complaint in the court of claims on March 19, 2020.

{¶ 10} On September 30, 2020, following a non-oral hearing, the court of claims issued a decision and judgment entry granting appellee's motion for summary judgment. The court of claims determined that appellant failed to commence his action against appellee within the applicable statute of limitations and, therefore, appellee was entitled to judgment as a matter of law.

{¶ 11} Appellant timely appealed to this court from the judgment of the court of claims.

## II. ASSIGNMENT OF ERROR

{¶ 12} Appellant assigns the following as trial court error:

> The Court of Claims of Ohio erred by granting summary judgement in favor of Defendant-Appellee Ohio University on Plaintiff-Appellant Aaron Bremar's breach of contract, negligence, and intentional infliction of emotional distress claims on the basis that such claims are barred by the applicable statute of limitations.

## III. STANDARD OF REVIEW

{¶ 13} "Summary judgment under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion." *Nalluri v. Jones*, 10th Dist. No. 19AP-779, 2020-Ohio-4280, ¶ 13, citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). The moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory allegations that the nonmoving party has no evidence to prove its case. *Nalluri* at ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Rather, the moving party must point to some evidence that affirmatively demonstrates the nonmoving party has no evidence to support each element of the stated claims. *Nalluri* at ¶ 13. " '[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if

the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' " *Id.*, quoting *Dresher* at 293.

{¶ 14} Appellate review of summary judgment is de novo. *Blank v. Bluemile*, *Inc.*, 10th Dist. No. 20AP-200, 2021-Ohio-2002, ¶ 15, citing *Hill v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-88, 2021-Ohio-561, ¶ 14, citing *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. " 'Thus, we conduct an independent review of the record and stand in the shoes of the trial court.' " *Hill* at ¶ 14, quoting *Nalluri* at ¶ 14, citing *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist.). Our review permits no deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5, (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

## IV. LEGAL ANALYSIS

### A. Appellant's Assignment of Error

{¶ 15} In appellant's sole assignment of error, appellant contends that the trial court erred when it granted appellee's motion for summary judgment because there are genuine issues of material fact whether appellant filed his complaint within two years of the date his cause of action accrued, and appellee is not entitled to judgment as a matter of law. We agree.

### 1. Breach of Contract

{¶ 16} R.C. 2743.16(A) provides that "civil actions against the state * * * shall be commenced no later than two years after the date of the accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties."

{¶ 17} " 'Under Ohio law, the general rule is that "a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." ' " *Merlitti v. Univ. of Akron*, 10th Dist. No. 19AP-357, 2019-Ohio-4998, ¶ 17, quoting *Marok v. Ohio State Univ.*, 10th Dist. No. 13AP-12, 2014-Ohio-1184, ¶ 25, quoting *Collins v. Sotka*, 81 Ohio St.3d 506, 507 (1998). However, for breach of contract actions, the cause does not always accrue the moment the breach occurs. *Merlitti* at ¶ 17. For some breach of contract claims, the cause of action accrues when the complaining party suffers actual damages. (Additional cites omitted.) *Id.*

**{¶ 18}** " 'It is axiomatic that "* * * when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature." ' " *Grubach v. Univ. of Akron*, 10th Dist. No. 19AP-283, 2020-Ohio-3467, ¶ 24, quoting *Bleicher v. Univ. of Cincinnati College of Medicine*, 78 Ohio App.3d 302, 308 (10th Dist.1992), quoting *Behrend v. State*, 55 Ohio App.2d 135, 139 (10th Dist.1977). *See also Tate v. Owens State Community College*, 10th Dist. No. 10AP-1201, 2011-Ohio-3452, ¶ 21; *Jefferson v. Univ. of Toledo*, 10th Dist. No. 12AP-236, 2012-Ohio-4793, ¶ 15. "In addressing the issue of whether such contract has been breached, the trier of fact appropriately looks to the terms of the contract as found in the college guidelines supplied to students." *Grubach* at ¶ 24, citing *Bleicher* at 308, *citing Embrey v. Cent. State Univ.*, 10th Dist. No. 90AP-1302 (Oct. 8, 1991), citing *Smith v. Ohio State Univ.*, 53 Ohio Misc.2d 11, 13 (1990).

**{¶ 19}** The parties agree that the appeals procedure set forth in the manual governed appellant's disciplinary appeal. The parties disagree as to the date appellant's claims against appellee accrued for purposes of the applicable statute of limitations.

**{¶ 20}** The disciplinary appeals process set forth in the manual identifies two distinct types of appeals: grade appeals and disciplinary appeals. Under the heading "Guiding Principles" the manual provides as follows:

> **Grade Appeals for Academic Performance (PART I, page 8).**
>
> When an assigned grade is for academic performance, the student is accorded a right of appeal (but not due process as defined on page 6).
>
> **Due Process for Disciplinary Penalties (PART II, page 16).**
>
> Due process is owed to any student who disputes a disciplinary measure/penalty associated with alleged professional or academic misconduct. See Section II on page 16.
>
> Due process for disciplinary measures includes:
>
> - Notice of policy and potential penalties for different types of infractions shall be in writing and distributed to all students.
>
> - Opportunity to be heard means that students are given the chance to respond to allegations in writing; and, an

> opportunity to speak to the appeals panels at both the department/school and college levels.

> • Right to appeal should include a process involving a panel of impartial individuals and reasonable time limits.

(Emphasis sic.)  (Aff. of Melissa Bowlby, Ex. B at 6.)

{¶ 21} In the February 2, 2018, letter, the SPC recommended appellant's dismissal from the program due to appellant's "lapses in professionalism" and "lapses in academic integrity, especially involving honesty and cheating."  Thus, appellant's appeal was governed by Section II of the manual pertaining to disciplinary appeals, rather than Section I pertaining to grade appeals.  In cases of disciplinary appeals, the manual defines the scope of the Dean's review authority as follows:

**Scope of Dean's Review Authority for Disciplinary Measures**

> In cases *where a disciplinary measure has been imposed due to alleged professional or academic misconduct* (*including* but not limited to formal reprimand, program of progressive improvement, suspension, or dismissal from an academic program)*, the judgment of the committee is advisory to the Dean.*

> Due to the seriousness of disciplinary proceedings and the risk of a misjudgment, the Dean will review all pertinent documents (e.g., course syllabi, program handbooks, documents submitted by the parties, and summary notes of the committee) to assure that due process has been followed and that the result is fundamentally fair to all parties. *The Dean may reverse or modify the Dean's Appeal Committee. The decision of the Dean is final and cannot be appealed for non-grade penalties/disciplinary measures.*

(Emphasis added.)  (Aff. of Melissa Bowlby, Ex. B at 20.)[1]

{¶ 22} Similarly, under the heading "Disciplinary Penalty to the College Dean Table II-2. Second-Level Appeal to College Dean," the manual sets forth the suggested timeline for the disciplinary appeals process.  *Id.* at 22.  The final step in the process is as follows: "Dean will sustain the Committees' grade decision but may affirm, reverse, or modify the

---

[1] Had appellant's appeal been governed by Section I of the manual, pertaining to grade appeals, the SPC decision would have been final, as the manual does not provide for a review by the Dean in such cases. (Aff. of Melissa Bowlby Ex. B at 11.)

disciplinary decision, then conveys final decision in writing to the student and the program." *Id.* at 20.

{¶ 23} The court of claims, in ruling that appellant's breach of contract claim was untimely filed, found as follows:

> Upon review of the evidence, [appellant] had been given multiple warnings, prior to February 2, 2018, regarding his professionalism violations of the Program's policy to the extent that he was placed on probation. Hence, [appellant] was on notice that his academic standing in the Program was in jeopardy. Then, at the February 2, 2018 meeting, Bowlby provided [appellant] with a letter, which she attests informed [appellant] of his dismissal from the Program due to continuing violations of the Program's policy. Furthermore, this letter explains the various grounds for [appellant's] dismissal from the Program and that his dismissal would be "effective February 2, 2018." [Appellant] himself admits that he was informed at the February 2, 2018 meeting that if he did not choose to voluntarily withdraw himself from the Program, then the SPC would move forward with its decision to dismiss him. *Although [appellant] argues that the February 2, 2018 letter was merely a "recommendation made by the Student Progress Committee," the evidence shows this letter was understood by the parties to signify and effectuate [appellant's] dismissal from the Program. Furthermore, [appellant] did not provide any Civ.R. 56 evidence to refute [appellee's] evidence. See Civ.R. 56(E). Consequently, the court finds that [appellant] was dismissed from the Program on February 2, 2018.*

(Emphasis added.)  (Sept. 30, 2020 Decision at 8.)

{¶ 24} The conclusion reached by the court of claims disregards the plain language of the manual.  Contrary to the court of claims' finding, SPC's February 2, 2018 letter is a mere recommendation of dismissal because the manual identifies it as such.  The manual specifically states that "the judgment of the committee is advisory to the Dean" and the Dean may "reverse or modify the * * * committee." (Aff. of Melissa Bowlby, Ex. B at 20.) Though the court of claims found "the evidence shows this letter was understood by the parties to signify and effectuate [appellant's] dismissal from the Program," the only evidence submitted by the parties in connection with the motion for summary judgment was the February 2, 2018 letter and the manual.  Bowlby's affidavit does not contain any substantive averments and no other evidentiary materials were filed or submitted in the

court of claims. Thus, the record contains no evidentiary support for the finding made by the court of claims, and consequently, no evidence for appellant to refute. Because the parties' intent with regard to program dismissal resides in the plain language of the manual, appellant was not under any obligation to present rebuttal evidence. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992)

{¶ 25} The Supreme Court of Ohio has noted that " '[n]ormally, a cause of action does not accrue until such time as the infringement of a right arises. It is at this point that the time within which a cause of action is to be commenced begins to run. The time runs forward from that date, not in the opposite direction, and thus when one's conduct is not presently injurious a statute of limitations begins to run against an action for consequential injuries resulting from such act only from the time that actual damage ensues.' " *Bd. of Edn. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 252, 256 (1981), quoting *State ex rel. Teamsters Local Union 377 v. Youngstown*, 50 Ohio St.2d 200, 203-204 (1977).

{¶ 26} The decision of the court of claims confuses appellant's knowledge of a possible dismissal from the program with actual damages. Appellee's conduct in providing appellant with notice that "his academic standing in the Program was in jeopardy," was not presently injurious to appellant in light of his contractual mandated right of appeal. (Decision at 8.) Similarly, because the time within which to commence an action moves forward from the date one suffers actual harm, the effective date of dismissal in the SPC recommendation letter is of no consequence.

{¶ 27} Appellant's amended complaint alleges that the Dean made his final determination of appellant's disciplinary appeal on May 16, 2018, when the Dean notified appellant, in writing, that his appeal had been denied and he was dismissed from the program. Though appellee now contends that the record contains no evidentiary support for appellant's claim that Dean Leite denied the appeal on May 16, 2018, appellee has not yet filed an answer in this case and did not directly challenge the allegation in its memorandum in support of summary judgment. Rather, appellee argued in the court of claims that the date Dean Leite denied appellant's appeal was not the date he was dismissed from the program. Thus, the date of denial is a factual issue that remains to be determined.

{¶ 28} The Dean made his final determination of appellant's disciplinary appeal, notified appellant in writing that his appeal had been denied and he was dismissed from

the program.  The manual provides that "[t]he decision of the Dean is final and cannot be appealed for non-grade penalties/disciplinary measures."  (Aff. of Melissa Bowlby, Ex. B at 20.)  Accordingly, appellant's cause of action for breach of contract accrued when he exhausted his contractual due process rights.  Appellant filed his complaint in this matter on March 19, 2020.

{¶ 29}  Appellee claims that our prior decision in *Merlitti*, supports the finding by the court of claims that appellant's breach of contract claim accrued on February 2, 2018, when the committee recommended dismissal.  *Merlitti* does not work in favor of appellee.

{¶ 30}  In the *Merlitti* case, Tonya Merlitti, enrolled as a student in Akron University's Marriage and Family Therapy Program ("Program").  Following a hearing, Merlitti was removed from the program January 7, 2016.[2]  One of Merlitti's former professors subsequently filed a complaint against Merlitti with the Ohio Counselor, Social Worker, and Marriage and Family Therapist Board ("Board"), a wholly separate entity from the University.  When the board was unable to substantiate the allegations against Merlitti, she applied for reinstatement to the program claiming that the reasons for her removal from the program had been proven untrue.

{¶ 31}  Merlitti was denied reinstatement on April 10, 2017.  She filed her complaint for breach of contract against the University on January 29, 2019.  The court of claims dismissed her complaint because it was filed more than two-years after she was removed from the program.  On appeal, this court rejected Merlitti's contention that her cause of action accrued on April 10, 2019, the date Akron University denied her application for reinstatement, rather than January 7, 2016, when she was removed from the program.  In so holding, this court reasoned:

> It was on * * * January 7, 2016, that Merlitti suffered a cognizable injury by no longer being enrolled in the University's program. In an attempt to avoid the application of the statute of limitations, Merlitti asserts she did not suffer actual injury until the board concluded its investigation on July 21, 2016. This argument is premised on Merlitti's unfounded position that the University's action against her was not injurious until the board, a wholly separate entity, determined it could not substantiate the allegations against her. However, this argument defies logic. Merlitti's claim is

---

[2] There is no indication in the decision that Merlitti had a contractual right of appeal.

against the University, and the injury occurred when Merlitti was no longer enrolled in the University's program. While the board's decision may have provided support to Merlitti's argument on the merits of her claim, it does not operate to change the timeline of events central to her claim for breach of contract.

*Merlitti* at ¶ 18.

{¶ 32} There is no comparison between the Dean's denial of appellant's appeal from SPC's recommendation in this case, and the subsequent board decision in *Merlitti*. In this case, the decision of the Dean was the final step in the contractually mandated disciplinary appeal process. Appellant's appeal to the Dean was not a separate proceeding before another entity. Thus, the facts and circumstances in the *Merlitti* case are vastly different from the facts in this case.

{¶ 33} Moreover, the holding in *Merlitti* is that *Merlitti* suffered actual harm and her breach of contract claim accrued on the date the University removed her from the program. Here, the plain language of the manual states that the SPC's judgment is merely advisory to the Dean and that the Dean's decision on appeal is final. Based on the language in the manual, appellee removed appellant from the program and his cause of action accrued on the date when the Dean denied his appeal, not February 2, 2018, when the SPC recommended dismissal. Appellant's amended complaint alleges that Dean Leite issued a decision in appellant's appeal on May 16, 2018. As previously noted, the date when Dean Leite denied appellant's appeal and dismissed appellant from the program is an issue of fact that has not been determined. If appellant's allegation is proven true, appellant's complaint was timely filed in the court of claims on March 19, 2020.

{¶ 34} Accordingly, because we find appellee failed to meet its initial burden on summary judgment, we hold that the court of claims erred when it ruled that R.C. 2743.16 barred appellant's breach of contract claim and granted summary judgment in appellee's favor.

### 2. Intentional Infliction of Emotional Distress

{¶ 35} Under R.C. 2305.09(D), a cause of action for intentional infliction of emotional distress must be commenced within four years of the date the cause accrued. *Cummins v. Madison Corr. Inst.*, 10th Dist. No. 10AP-769, 2011-Ohio-1608, ¶ 9, citing

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375 (1983), abrogated on other grounds by *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451. Because the statutory limitations period applicable to a claim for intentional infliction of emotional distress is longer than two years, appellant's claim against the state is subject to the two-year limitations period in R.C. 2743.16(A). *Cummins* at ¶ 9, citing *Bell v. Ohio State Bd. of Trustees*, 10th Dist. No. 06AP-1174, 2007-Ohio-2790, ¶ 19.

**{¶ 36}** The court of claims concluded that appellant's claim for intentional infliction of emotional distress accrued on February 2, 2018 and that appellant's complaint was untimely filed. We disagree.

**{¶ 37}** A cause of action for intentional infliction of emotional distress accrues and the statute of limitations begins to run at the time the wrongful act is committed and the emotional impact is felt. *Bell at* ¶ 22, citing *Collins v. Sotka* 81 Ohio St.3d 506, 507 (1998), *Karlen v. Carfangia,* 11th Dist. No. 2000-T-0081, 2001 Ohio App. LEXIS 2481, and *Biro v. Hartman Funeral Home*, 107 Ohio App.3d 508, 514 (8th Dist.). Appellant's complaint alleges a course of conduct on the part of appellee's employees culminating in appellant's dismissal from the program on May 16, 2018, when the Dean denied his disciplinary appeal. Because appellant's complaint alleges intentional, injurious conduct on the part of appellee that occurred within two years of the date appellant filed his complaint, there is a genuine issue of material fact whether appellant timely filed his cause of action for intentional infliction of emotional distress.

### 3. Negligence

**{¶ 38}** Appellant's complaint also asserts a negligence claim allegedly arising out of his dismissal from the program. The trial court determined that appellant's cause of action sounding in negligence accrued on February 2, 2018, and that his complaint was untimely filed.

**{¶ 39}** The statute of limitations was the only grounds for summary judgment set forth in appellee's motion. We have determined that appellant's breach of contract claim accrued on the date when the Dean denied appellant's appeal and dismissed him from the program, not February 2, 2018. Because appellee's statute of limitations defense presumes that appellant's complaint alleges a cause of action sounding in negligence, and because appellant's complaint alleges conduct on the part of appellee that may have occurred within

two years of the date appellant filed his complaint, the court of claims erred when it granted summary judgment on the negligence claim.

{¶ 40} For the foregoing reasons, we hold that the trial court erred when it determined that appellant's claims were barred by the two-year statute of limitations and granted summary judgment to appellee. Accordingly, we sustain appellant's sole assignment of error.

## V. CONCLUSION

{¶ 41} Having sustained appellant's sole assignment of error, we reverse the judgment of the Court of Claims of Ohio and remand this matter for further proceedings.

*Judgment reversed.*

SADLER, J., concurs in judgment only.
NELSON, J., concurs.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____