**MARET, Appellant,**

v.

**CSX TRANSPORTATION, INC., Appellee, et al.**

[Cite as *Maret v. CSX Transp., Inc.* (1998), 130 Ohio App.3d 816.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980221.

Decided Dec. 24, 1998.

*Callas, Papa, Jackstadt & Halloran* and *Eric D. Jackstadt;* and *Trainor & Darpel & Associates* and *Robert N. Trainor,* for appellant,

*Lindhorst & Dreidame* and *James L. O'Connell,* for appellee.

PAINTER, Judge.

This is a case brought under the Federal Employers' Liability Act ("FELA"), Section 51 *et seq.*, Title 45, U.S.Code, by a railroad employee who was injured when a train on which he was working was hit by a car. The employee claimed that the railroad negligently failed to provide a reasonably safe working environment for him. We must now decide if he presented enough evidence of negligence to withstand the railroad's motion for summary judgment.

## I. BACKGROUND

On September 13, 1994, at approximately 6:30 p.m., plaintiff-appellant Gary S. Maret was working as a switchman for his employer, defendant-appellee CSX Transportation, Inc., when the train on which he was working was hit by a car. The train consisted of three boxcars that were pushed by a locomotive. There was no caboose.

Defendant Patricia A. Cox was the driver of the car that collided with the train. The collision occurred where the railroad tracks crossed a road named Crawford Street. Cox was driving home from work on a route that she had taken for about the past three years. The train was moving west along the tracks. Cox was driving north on Crawford Street.

As Cox approached the tracks, she encountered various signs that warned of a railroad crossing. These included two "Railroad Crossing" signs on the pavement and a sign on the side of the street. There were also three pairs of warning lights, all of which were flashing, along the tracks. As the train approached the crossing, the engineer rang its bell and sounded its whistle. But Cox testified that she neither saw nor heard any of these warnings. She first noticed the train when she was about two automobile lengths away from it. This was when she hit her brakes. It was too late. The car collided with the train, causing Maret's injuries.

Maret was riding on a side ladder of the lead boxcar as the train went over the crossing—on the same side of the train with which Cox's car collided. When he heard her brakes squealing, he realized that her car might hit him. In an effort to get out of the way, he grabbed another ladder on the end of the boxcar and swung his body onto that ladder. This swinging caused hyperextension of his left shoulder and low back strain.

He filed an FELA lawsuit against CSX (as well as a negligence suit against Cox), asserting that CSX's negligence had led to his injuries. First, he claimed that trees and shrubbery, or brush, had obstructed Cox's view of the railroad crossing's warning signs. According to him, CSX had negligently failed to clear

this brush. Second, he asserted that the train would have been safer for him if there had been a caboose. He claimed that he would have been riding on it instead of on a side ladder of a boxcar. According to him, CSX was negligent because it had failed to provide tracks that would have accommodated a caboose.

The trial court granted summary judgment in favor of CSX. It is this granting of summary judgment that Maret now appeals. In his sole assignment of error, he asserts that the court erred in holding that there were no genuine issues of fact regarding CSX's alleged negligence. We disagree and hold that, even under the FELA's more liberal standard of negligence, there were no genuine issues of material fact.

## II.  FELA STANDARD

Under the FELA, railroads are liable to their employees for injuries caused by the railroads' negligence:

"Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * [for] injury or death resulting *in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."[1]

■ The negligence standard under the FELA—which specifically refers to negligence in whole *or in part* by the railroad—is more liberal than that under the common law.[2] To create a jury question, a plaintiff must present "more than a scintilla of evidence * * *, but not much more."[3] As the United States Supreme Court stated in the lead case *Rogers v. Missouri Pacific RR. Co.*, "the inquiry in these cases * * * rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit."[4]

■ But, despite the liberal standard of negligence under the statute, a genuine issue of material fact still must exist for an FELA case to survive summary judgment. The general rule is that FELA cases brought in state

---

1. (Emphasis added.) Section 51, Title 45, U.S.Code.

2. See *Aparacio v. Norfolk & Western Ry. Co.* (C.A.6, 1996), 84 F.3d 803, 807.

3. *Id.* at 810.

4. *Rogers v. Missouri Pacific RR. Co.* (1957), 352 U.S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493, 500.

courts are governed by federal substantive law, but by state procedural rules.[5] Thus, we look to Ohio's rules regarding summary judgment. (Although the Ohio rules of summary judgment are based upon the federal rules, the language of the Ohio rules suggests that they might be more favorable to nonmovants than their federal counterparts. Fed.R.Civ.P. 56[C] does not contain the requirement that the evidence be construed most strongly in favor of the nonmoving party, which is a fundamental aspect of Ohio's Civ.R. 56[C].[6])

## III. SUMMARY JUDGMENT STANDARD

A summary judgment motion shall be granted if the court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine issue of material fact remains to be litigated, and that the evidence demonstrates that reasonable minds can only come to a conclusion that is adverse to the party opposing the motion.[7] The moving party bears the initial burden of identifying the parts of the record that demonstrate the absence of a genuine issue of material fact.[8] When the moving party discharges that burden, the nonmoving party has the reciprocal burden of producing evidence on the issues for which it will bear the burden of production at trial.[9] Appellate review of a lower court's entry of summary judgment is *de novo*.[10] Applying this standard, we now turn to Maret's claims.

## IV. MARET'S CLAIMS

Maret's claims against CSX can be divided into two categories. First, there is a claim regarding CSX's alleged failure to clear brush in front of the railroad's warning signs. Second, there is a claim regarding CSX's failure to provide a track that would have accommodated a caboose. In the analysis of these claims, it is important to remember that the issue is whether CSX was negligent, not whether Cox was negligent. One of CSX's arguments is that Cox was the sole legal cause of Maret's injuries because she failed to follow an Ohio statute that

---

**5.** *St. Louis Southwestern Ry. Co. v. Dickerson* (1985), 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303, 306.

**6.** *Maynard v. Butterworth Properties* (Jan. 26, 1995), Franklin App. No. 94APE07–990, unreported, 1995 WL 41606.

**7.** Civ.R. 56(C).

**8.** *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274.

**9.** *Id.*

**10.** *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, 1274.

requires drivers of vehicles to stop when signs warn that a railroad is approaching.[11] Because Cox failed to follow this law, CSX claims that it cannot be liable as a matter of law.

■ Under the FELA, a railroad is not liable if a third person, such as Cox, was the *sole* legal cause of the plaintiff's injuries.[12] But the railroad is liable if its negligence played a role in causing the plaintiff's injuries.[13] Here, if CSX did not provide a reasonably safe working environment, then it may be liable, even though Cox negligently collided with the train. Thus, we focus on CSX, not Cox.

## A. BRUSH CLAIM

■ Maret first claims that CSX negligently failed to, clear brush away from its warning signs, which led to his injuries because Cox's view of the signs was obstructed.[14] He claims that he had noticed brush taller than himself along the tracks before the collision and that he and some other employees had complained to CSX about it. He also points out that Cox testified in her deposition that she had not seen the railroad's warning signs because of overgrown shrubbery and trees. She testified that she had gone back to the crossing on the day after the collision and had again observed that the warnings were not visible because of the brush.

On the other hand, CSX argues that the brush did not obstruct the view of the warning signs and that Cox was just not paying attention to them before the collision. It points out that Cox's deposition reveals that she had never seen a train on the tracks before and that she had erroneously concluded that there was not a live crossing at Crawford Street. It stresses that Cox admitted that she was not anticipating a train on September 13, 1994, that she was not in the habit of looking at the warning signs, and that she could not remember looking at them or the train before the collision.

Also, CSX presented properly authenticated photographs of the railroad crossing. These pictures were taken by one of its claims agents, about eighteen hours

---

11. See R.C. 4511.62.

12. See *Inman v. Baltimore & Ohio RR. Co.* (1959), 361 U.S. 138, 140, 80 S.Ct. 242, 243–244, 4 L.Ed.2d 198, 200–201.

13. See *Henry v. Norfolk & W. Ry. Co.* (Feb. 2, 1994), Scioto App. No. 2129, unreported, 1994 WL 43729 (distinguishing *Inman*); *Tolliver v. Consol. R. Corp.* (1984), 11 Ohio St.3d 56, 57, 11 OBR 201, 202–203, 463 N.E.2d 389, 390 (railroad can be liable under common law even if driver did not look and listen for trains); *Harris v. Chesapeake & Ohio Ry. Co.* (C.A.7, 1966), 358 F.2d 11, 12 ("[a]lthough any number of causes may contribute to an injury, so long as one may be attributable to the railroad's negligence, a proper foundation for liability exists").

14. See R.C. 4955.36 (regarding brush along tracks); Section 213.37, Title 49, C.F.R. (same).

after the collision. The agent determined that no significant changes had taken place on or near the crossing between the time of the collision and the time that he took the pictures. Of particular note is a picture taken one hundred feet from the crossing. That picture shows that none of the warning signs were obstructed by brush. In Cox's deposition, however, she denied the accuracy of this picture.

■ Thus, we are presented with very different versions of whether the brush on the tracks may have obstructed Cox's view of the warning signs. Very often, when opposing parties present conflicting accounts of a case, this creates a factual question that prevents a court from granting summary judgment. But, in certain cases, summary judgment can be granted based on the "physical-facts rule." [15] That rule provides that a witness's testimony that is " 'positively contradicted by the physical facts cannot be given probative value by the court.' " [16] In other words, if one party presents enough physical evidence that supports its version of a controverted issue, then the other party's testimony regarding the issue might be rendered so "inherently incredible" that a court should not give it any probative value.[17] Such physical evidence might include a properly authenticated photograph.[18]

Here, CSX presented a properly authenticated photograph taken one hundred feet away from the railroad crossing that clearly shows that brush did not obstruct any of the three pairs of flashing lights along its tracks. That picture was taken shortly after the collision. There is no evidence that any brush had been removed between the time of the collision and the time that the picture was taken. Considering that Cox admitted that she was not anticipating a train, that she was not in the habit of looking at the warning lights, and that she could not remember looking for them or the train, we conclude that there is insufficient evidence to create a genuine issue of material fact that brush obstructed her view of the warning signs, or the oncoming train. Although Maret testified that he had seen brush on the tracks before the collision, and although Cox testified that she returned to the crossing the day after the collision and confirmed that brush obstructed the warning signs, we hold that CSX's photograph of the site positively negates this testimony. Under the physical-facts rule, we hold that the evidence offered by Maret is so "inherently incredible" that it is entitled to no probative value.

---

15. *McDonald v. Ford Motor Co.* (1975), 42 Ohio St.2d 8, 12, 71 O.O.2d 4, 6–7, 326 N.E.2d 252, 255.

16. *Id.,* quoting *Lovas v. Gen. Motors Corp.* (C.A.6, 1954), 212 F.2d 805, 808.

17. *Hirschberg v. Albright* (1974), 67 O.O.2d 219, 220, 322 N.E.2d 682, 683–684.

18. *Id.*

■ We note that there are two pictures in the record—one at four hundred seventy-five feet from the tracks, and one at five hundred seventy-five feet from the tracks—which do show two of the three pairs of flashing lights somewhat obstructed by brush. Maret argues that these pictures, which were also authenticated by CSX's claims agent, create a genuine issue of material fact regarding his brush claim. But R.C. 4511.62, which governs a driver's duties when he or she approaches railroad tracks, makes these pictures irrelevant. Under that section of the Revised Code, any person driving a vehicle must stop within fifty feet, but not less than fifteen feet, from railroad tracks if a "clearly visible electric or mechanical signal device gives warning of the immediate approach of a train."[19] Based on R.C. 4511.62, we conclude that the only relevant inquiry is whether Cox had an adequate opportunity to observe the flashing lights within fifty to fifteen feet of the tracks. We hold that the picture taken one hundred feet from the tracks, which clearly shows that the brush did not obstruct any of the flashing lights, establishes that Cox had an adequate opportunity to observe the lights.[20] The pictures from four hundred seventy-five feet and five hundred seventy-five feet are not germane. They simply reflect the logical conclusion that, as one gets farther and farther away from railroad tracks, his or her view of warning signs will inevitably be obstructed. And, from the facts of this case, it seems that no matter how many pairs of flashing lights would have been visible, Cox was simply not paying attention anyway.

Therefore, we hold that no genuine issue of material fact exists regarding Maret's brush claim. A review of the witnesses' testimony and the photographic evidence establishes that the warning signs would have been visible to Cox if she would have taken care to look for them.

## B. CABOOSE CLAIM

■ Maret's second claim involves the lack of a caboose on the train on which he was injured. He explains that a caboose was available for him and his crew on that day. But, at the time of the collision, it was not connected to the train. He argues that the tracks were configured in such a way that a caboose could not be placed on the train. According to him, although there was a "stub" track nearby that could have accommodated a caboose, it was overgrown with brush and was

---

19. R.C. 4511.62(A)(1)(a).

20. See *Bickley v. Norfolk & W. Ry. Co.* (N.D.Ohio 1998), 60 F.Supp.2d 732, (railroad not negligent based on pictures eighty-five feet from the tracks); *Cates v. Consol. R. Corp.* (1995), 100 Ohio App.3d 288, 298, 653 N.E.2d 1229, 1235–1236 (railroad's warnings adequate based on driver's unobstructed view of tracks from seventy-five feet away). ·

unusable. He argues that CSX was negligent because it failed to provide and maintain a track that would have accommodated a caboose.

But he points to no laws that require railroads to have cabooses on their trains. In fact, no such requirement exists under Ohio statutes, federal statutes, or the common law. The Federal Railroad Administration, which is responsible for enacting nationally uniform regulations related to railroad safety,[21] has even stated that it does not consider the lack of a caboose to be a safety issue *per se.*[22] Also, Maret concedes that his union "gave up cabooses" in a national contract negotiation more than ten years ago.

██ Considering that CSX did not even have a duty to provide Maret and his crew with a caboose in the first place, we find Maret's caboose claim to be specious. There is no reason that CSX could have foreseen that a caboose would be necessary to prevent the injury that occurred here. Under FELA law, as well as hornbook negligence law, a party is not liable if it cannot reasonably foresee any injury as the result of its acts.[23] Here, the lack of foreseeability leads us to the conclusion that CSX's failure to provide a track that would have accommodated a caboose was not a legal, or proximate, cause of Maret's injuries. Although CSX certainly had a duty to provide a safe workplace and equipment to its employees, Maret has not convinced us that a genuine issue of material fact exists regarding his caboose claim.

## V. CONCLUSION

Even under the FELA's liberal standard of negligence, no genuine issues of material fact exist as to Maret's claims. The evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to Maret. Summary judgment was properly granted to CSX. Therefore, we affirm the judgment of the trial court.

*Judgment affirmed.*

DOAN, P.J., and GORMAN, J., concur.

---

21. Section 20106, Title 49, U.S.Code.

22. 51 F.R. 17,300, 17,301 (regarding brakes on trains).

23. *Gallick v. Baltimore & Ohio RR. Co.* (1963), 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618, 625–626; Keeton, Dobbs, Keeton & Owen, Prosser & Keeton on the Law of Torts (5 Ed.1984) 280, Section 43.