[Cite as *Waldron v. Edinger*, 2022-Ohio-4296.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Patricia A. Waldron,                         :

       Plaintiff-Appellant,          :           No. 22AP-195
                                         (C.P.C. No. 20CV-8233)
v.                                           :

                                           (ACCELERATED CALENDAR)
Kevin Edinger,                               :

       Defendant-Appellee.          :

---

D E C I S I O N

Rendered on December 1, 2022

---

**On brief:** *Kisling, Nestico, & Redick*, and *Douglas J. Blue* for
appellant. **Argued:** *Douglas J. Blue*.

**On brief:** *Curry Roby, LLC*, and *Trent M. Thacker* for
appellee. **Argued:** *Trent M. Thacker*.

---

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Plaintiff-appellant, Patricia A. Waldron, appeals from a judgment of the
Franklin County Court of Common Pleas, in favor of defendant-appellee, Kevin Edinger.
For the reasons that follow, we affirm.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} Appellant leased a plot of land from appellee for $100 per month, and she
moved a trailer home onto the premises she had leased from a third-party. The plot is
located at 5838 Meadowbrook Road in Albany, Ohio.[1] Appellee and his parents live across
the street at 5792 Meadowbrook Road. Appellee acknowledges he told appellant to use this

---

[1] Though the real property is located in Athens County, appellant filed her complaint in Franklin County
pursuant to Civ.R. 3(C). Appellee did not move the trial court for a change of venue.

address for purposes of mail delivery. The mailbox for 5792 Meadowbrook Road is in the front of the residence.

{¶ 3} On September 14, 2017, appellant was informed that a package addressed to her had been left at the back entrance to 5792 Meadowbrook Road. According to appellant, she crossed the street and traversed the concrete walkway that lead to the back of the home. Appellant experienced no difficulties as she traversed the concrete walkway, reached the ramp at the end of the walkway and approached the back entrance. Appellant received the small package from one of appellee's parents and headed back down the ramp. Appellant admitted she was not looking down as she left the ramp and stepped onto the walkway. Appellant tripped and fell when her foot caught on the lip of a concrete slab that was greater in height than the adjoining concrete slab. Appellant sustained serious injuries to her right shoulder and arm as a result of the fall.

{¶ 4} On December 22, 2020, appellant filed her complaint against appellee alleging negligence per se based on alleged violations of the Landlord-Tenant Act, and common law negligence. Appellee moved the trial court for summary judgment on the issue of liability. In support of the motion, appellee submitted his own deposition and the affidavit of Linda Cisler, an insurance adjuster for appellee's insurer. Appellant also submitted several photographs of the sidewalk and surrounding area taken by Cisler approximately two weeks after appellant's fall. Appellant submitted her own depositions in opposition to the motion for summary judgment along with two photographs of the sidewalk she had taken approximately one year after the fall.

{¶ 5} The trial court granted summary judgment for appellee upon finding the alleged defect in the walkway insubstantial, as a matter of law, because there was no evidence the deviation in height between the concrete slabs was two inches or more. The trial court relied on a photograph taken by Cisler which purports to show that the deviation in height between the two slabs over which appellant tripped and fell was only one and one-half inches. The trial court also relied on a photograph submitted by appellant, also showing a deviation of just one and one-half inches.

{¶ 6} Appellant timely appealed to this court from the March 23, 2022 judgment.

## II. ASSIGNMENT OF ERROR

{¶ 7} Appellant assigns the following as trial court error:

[1.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT WHEN IT GRANTED DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

## III.  STANDARD OF REVIEW

{¶ 8}  "Summary judgment under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion." *Nalluri v. Jones*, 10th Dist. No. 19AP-779, 2020-Ohio-4280, ¶ 13, citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).  "The moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory allegations that the nonmoving party has no evidence to prove its case." *Bremar v. Ohio Univ.*, 10th Dist. No. 20AP-513, 2022-Ohio-1382, ¶ 13, citing *Nalluri* at ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  "Rather, the moving party must point to some evidence that affirmatively demonstrates the nonmoving party has no evidence to support each element of the stated claims." *Bremar* at ¶ 13, quoting *Nalluri* at ¶ 13.  " '[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' " *Nalluri* at ¶ 13, quoting *Dresher* at 293.

{¶ 9}  Appellate review of summary judgment is de novo. *Blank v. Bluemile, Inc.*, 10th Dist. No. 20AP-200, 2021-Ohio-2002, ¶ 15, citing *Hill v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-88, 2021-Ohio-561, ¶ 14, citing *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29.  " 'Thus, we conduct an independent review of the record and stand in the shoes of the trial court.' " *Hill* at ¶ 14, quoting *Nalluri* at ¶ 14, citing *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist.).  "Our review permits no deference to the trial court's determination." *Bremar* at ¶ 14, citing *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.), citing *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).  " 'We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it.' " *Columbus Steel Castings Co. v. Transp. & Transit Assoc., LLC*, 10th Dist. No. 12AP-970,

2014-Ohio-272, ¶ 28, quoting *Cashlink, LLC v. Mosin, Inc.*, 10th Dist. No. 12AP-395, 2012-Ohio-5906, ¶ 14.

## IV. LEGAL ANALYSIS

### A. Assignment of Error

{¶ 10} In appellant's sole assignment of error, appellant contends the trial court erred in granting summary judgment for appellee. We disagree.

### 1. Common Law Negligence

{¶ 11} "In an action for negligence, a plaintiff must prove: (1) the defendant owed plaintiff a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury." *Simms v. Penn Natl. Gaming, Inc.*, 10th Dist. No. 21AP-185, 2022-Ohio-388, ¶ 19, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984); *Blain v. Cigna Corp.*, 10th Dist. No. 02AP-1442, 2003-Ohio-4022, ¶ 7 .

{¶ 12} "In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed." *Simms* at ¶ 20, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 8, citing *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315 (1996). Ohio adheres to the common-law classifications of invitee, licensee, and trespasser. *Carpenter v. Mt. Vernon Gateway, Ltd.*, 5th Dist. No. 13CA6, 2014-Ohio-465, ¶ 19, citing *Shump v. First Continental-Robinwood Assoc.*, 71 Ohio St.3d 414, 417 (1994).

{¶ 13} An invitee is a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner. *Carpenter* at ¶ 20, citing *Broka v. Cornell's IGA Foodliner, Inc.*, 5th Dist. No. 12CA100, 2013-Ohio-2506, ¶ 20, citing *Gladon* at 315. The owner or occupier of the premises owes its invitees a duty to exercise ordinary care to maintain the premises in a reasonably safe condition, such that its invitees will not unreasonably or unnecessarily be exposed to danger. *Byrd* at ¶ 9, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). However, a premises owner is not an insurer of its invitees' safety against all forms of accident that may occur on its premises. *Id*. "No presumption or inference of negligence arises from the mere occurrence of an accident or from the mere fact that an injury occurred." *Byrd* at ¶ 9, citing *Barker v. Wal-Mart Stores, Inc.*, 10th Dist. No. 01AP-

658 (Dec. 31, 2001). "Rather, 'there must be direct proof of a fact from which the inference can reasonably be drawn.' " (Internal citation and quotation omitted.) *Byrd* at ¶ 9.

{¶ 14} "The law regarding defects in sidewalks and related issues arising therefrom is well-established." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-787, 2013-Ohio-5106, ¶ 9. As a general rule, landowners are not liable for minor defects in sidewalks and other walkways because these are commonly encountered and pedestrians should expect such variations in the walkways. *Id.*, citing *Backus v. Giant Eagle, Inc.*, 115 Ohio App.3d 155, 157 (7th Dist.1996). A pedestrian has a duty to look for and avoid known and obvious cracks in the walkway surface. *Id.*

{¶ 15} In *Kimball v. Cincinnati*, 160 Ohio St. 370 (1953), the Supreme Court of Ohio adopted what is commonly referred to as the "two-inch rule," which provides that a difference in elevation in a sidewalk or walkway, which is less than two inches, is insubstantial, as a matter of law, and will not support a negligence claim. *Harrigill v. Thompson Concrete, Ltd.*, 10th Dist. No. 17AP-451, 2017-Ohio-9201, ¶ 11. Accordingly, under Ohio law there is a rebuttable presumption that a defect of less than two inches in height is insubstantial as a matter of law and does not give rise to liability. *Id. See also Cash v. Cincinnati*, 66 Ohio St.2d 319 (1981). Where plaintiff fails to produce evidence to rebut the presumption, summary judgment may be granted in favor of defendant. *Humphries v. C.B. Richard Ellis, Inc.*, 10th Dist. No. 05AP-483, 2005-Ohio-6105, ¶ 18.

{¶ 16} There does not appear to be any dispute in this case that appellant was an invitee on appellee's premises at the time she sustained her injuries. When appellee was asked at his deposition if appellant was trespassing at the time of her fall appellee responded: "No, she was just getting her mail." (Feb. 4, 2020 Def.'s Dep. Tr. at 58.)

{¶ 17} Thus, the primary issue for the trial court was whether appellant presented evidence that would permit a reasonable trier of fact to conclude that the deviation in height between the two concrete slabs in the walkway was two inches or more.

{¶ 18} In granting summary judgment for appellee, the trial court found as follows:

> Upon review, the Court finds that Defendant has demonstrated that the defect in the sidewalk is two inches or less. Plaintiff cannot successfully oppose this evidence with one photograph taken a year later that shows a defect of less than two inches. Plaintiff's speculation that the elevation

> increases to over two inches likewise cannot create a genuine
> issue of material fact.

(Mar. 23, 2022, Decision & Entry at 5.)

{¶ 19} Appellant testified that the concrete slab over which she tripped and fell was positioned at such an angle relative to the abutting slab that the deviation in height between the two slabs was greater in the area where she tripped and fell. The photographs submitted to the trial court corroborate appellant's claim. Appellee acknowledged that the deviation in height between the two slabs of concrete where appellant fell is greater at the left edge than the right.

{¶ 20} Appellant visited the site a year after the fall to measure the change in elevation, and she submitted a photograph showing a one and a half inch deviation in height between the two slabs. At her November 2, 2019 deposition, appellant was asked about Exhibit F, one of the photographs of the walkway taken by Cisler on September 29, 2017. Using Exhibit F, appellant drew a circle on the spot where she made the measurement showing a deviation in height of a little more than an inch and a half. She drew that circle slightly left of the center of the slab, over a vertical crack in the concrete. She also drew a circle around the left edge of the concrete slab marking the place where she caught her toe and fell.[2]

{¶ 21} One of the photographs taken by Cisler two weeks after appellant's fall indicates a deviation of less than one inch near the right edge of the concrete slab over which appellant fell. (Sept. 27, 2021 Aff. of Linda Cisler, Ex. B-9, at 11.) Another photograph taken by Cisler on the same day shows a deviation of almost one and three-fourths inches very near the left edge of the same concrete slab. (Aff. of Linda Cisler, Ex. B-8, at 10.) The photograph marked as Exhibit B-8 also shows that some vegetation is growing between the two concrete slabs at the very left edge. A comparison of the spot where appellant fell as shown on Exhibit F and the position of the one and three-fourths inch measurement shown in Exhibit B-8, reveals that the deviation between the height of the two slabs in the spot where appellant fell is less than two inches.[3]

---

[2] Exhibit F is one of the photographs attached to Cisler's affidavit and marked as Exhibit B-5.
[3] Exhibit F and Exhibit B-11 attached to Cisler's affidavit appear to be the same photograph, except that Exhibit F has the marking placed by appellant at her deposition.

{¶ 22} Based on the measurements shown in the photographs taken by Cisler and appellant, the only reasonable conclusion to reach is that the deviation in height between the two slabs is less than two inches. Thus, we agree with the trial court that under the two inch rule the defect in the walkway was insubstantial, as a matter of law.

{¶ 23} In her November 2, 2019 deposition, however, appellant provided the following testimony about the orientation of the two slabs, the extent of the deviation in height, and her ability to observe the deviation:

A. It is to the left where the higher rise was that I couldn't see.

Q. Okay. And that's the area where it was overgrown where you circled on Exhibit F, correct?

A. Yes.

Q. Is that the part where you fell?

A. Yes. This is where my foot got stuck, my shoe got stuck in that.

Q. So that same spot?

A. Yes.

Q. Have you ever measured that spot? Do you know how tall the change in elevation is?

A. I can tell you from this point here, it was like 1 1/2. And it just goes up.

Q. So that was -- you drew another circle to the right of that, correct?

A. Yes.

Q. You said that's about 1 1/2?

A. Yes. Or a little over 1 1/2. So this would have been -- at the time that I was measuring, it was overgrown, so it would have been over 2 inches easy.

Q. You measured it and it was over 2 inches?

A. So ...

Q. When did you measure it?

A. It was a year later.

(Nov. 12, 2019 Pl's Dep. Tr. at 33-34.)

{¶ 24} Appellant claims that her estimate of the deviation in height between the two slabs is sufficient to rebut the presumption of non-liability under the two inch rule even

though the photographic evidence shows a defect of less than two inches in height. The trial court essentially found appellant's testimony inadmissible as it afforded no evidentiary weight to appellant's "speculation." (Decision & Entry at 5.) In our view, appellant's estimate arguably qualifies as admissible lay opinion under Evid.R. 701, as her estimate of the deviation in height between the two concrete slabs was rationally based on her own perceptions and it would be helpful to the court in determining one of the material issues in the case. *See* Evid.R. 701; *Stockdale v. Baba*, 153 Ohio App.3d 712, 2003-Ohio-4366, ¶ 83 (10th Dist.). Nevertheless, we agree that appellant's testimony was inadmissible, but for a slightly different reason.

{¶ 25} "Under the physical-facts rule, 'neither a court nor jury can give probative value to any testimony positively contradicted by the physical facts.' " *Bradley v. Ohio DOT*, 10th Dist. No. 13AP-918, 2014-Ohio-3205, ¶ 24, quoting *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶ 75, citing *McDonald v. Ford Motor Co.*, 42 Ohio St.2d 8, 12 (1975). "[I]n certain cases, summary judgment can be granted based on the 'physical-facts rule.' " *Maret v. CSX Transp.*, 130 Ohio App.3d 816, 823 (1st Dist.1998), citing *McDonald* at ¶ 12. "Such physical evidence might include a properly authenticated photograph." *Id.*, citing *Hirschberg v. Albright*, 1st Dist. No. C-73480 (Apr. 1, 1974).

{¶ 26} Here, appellant's testimony that the deviation between the two concrete slabs was "over 2 inches easy" is positively and unequivocally contradicted by the properly authenticated photographs taken two weeks after appellant's fall. (Pl.'s Dep. Tr. at 34.) (Aff. of Linda Cisler, Ex. B-8, B-11, at 10, 13.) In other words, appellant's estimate of the deviation between the two concrete slabs is in conflict with the established physical facts in the case. Accordingly, we agree with the trial court's decision to disregard appellant's estimate, albeit for slightly different reasons than the trial court.

{¶ 27} Even though the evidence in the record shows that the deviation in height between the two concrete slabs was less than two inches, the presumption of non-liability created by the two inch rule may be rebutted by showing attendant circumstances sufficient to render the defect substantial. *Blain* at ¶ 9. In *Blain*, this court noted "[t]he term attendant circumstances defies precise definition." *Id.* at ¶ 11, citing *Stockhauser v. Archdiocese of Cincinnati*, 97 Ohio App.3d 29, 32-33 (2d Dist.1994). With regard to sidewalk defects, attendant circumstances may include "any distraction that would come to

the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time," including "the condition of the sidewalk as a whole, its pedestrian traffic volume, *visibility of the defect*, and whether the accident site was such that one's attention could easily be diverted." (Emphasis added.) (Internal citations and quotations omitted.) *Blain* at ¶ 11. *See also Dubenion v. DDR Corp.*, 10th Dist. No. 15AP-915, 2016-Ohio-8128, ¶ 15.

{¶ 28} In granting summary judgment for appellee, the trial court reached the following conclusion regarding attendant circumstances:

> [T]he Court finds that there were no attendant circumstances that would preclude the application of the two-inch rule. Plaintiff does not argue that any attendant circumstances apply. She did argue that the open and obvious doctrine did not apply because of vegetation covering the sidewalk and the concrete was the same color on and around the defect. However, Plaintiff testified that she was not looking down while she was walking, such that any vegetation or coloring of the concrete would not have contributed to her fall.

(Decision & Entry at 5.)

{¶ 29} An obstruction preventing a pedestrian from observing a defect in a sidewalk qualifies as an attendant circumstance for purposes of the exception to the two inch rule. *See Blain*; *Dubenion*. The trial court acknowledged appellant made this argument in opposition to appellee's motion for summary judgment. Under the attendant circumstances exception, a defect that would otherwise be insubstantial by operation of the two inch rule, may be deemed substantial if the defect is hidden from view. Under such circumstances, plaintiff's failure to look down would be irrelevant to the analysis.

{¶ 30} As previously noted, appellant submitted a photograph showing vegetation growing between the two slabs near the left edge where she claims to have fallen. (Aug. 5, 2021 Pl.'s Dep. Tr. at 15.) The photograph depicts a slightly thicker growth of vegetation between the two concrete slabs than photographs taken by Cisler two weeks after appellant's fall. Appellee testified that the condition of the sidewalk on the date appellant fell is accurately depicted in Exhibit 3.[4] Exhibit 3 depicts a small amount of vegetation growing at the very left edge of the concrete slab, but less than is depicted in Exhibit I.

---

[4] Q. And would you agree with me that at the time of Patty's fall there was some vegetation growing in between the two concrete slabs?

{¶ 31} In her November 12, 2019 deposition, appellant made the following observations about Exhibit F:

> Q. This is marked Exhibit F. Is this the area where you fell.
>
> A. This is the area where I fell.
>
> Q. Okay.
>
> A. And it was not this clean. I will tell you that.
>
> Q. Okay. Well, what was on it?
>
> A. It was overgrown here.
>
> Q. What was?
>
> A. Over in this area here.
>
> Q. Where the crack was?
>
> A. Yeah, over -- where the -- the biggest end where I tripped was overgrown here.
>
> Q. Okay. With what?
>
> A. Whatever this stuff is.
>
> Q. Some sort of foliage --
>
> A. Yes, foliage.
>
> Q. -- that's in the picture?
>
> A. Um-hmm.
>
> Q. Did you ever take any photographs around that time?
>
> A. A year later. I didn't take it at that time, but I did a year later. See, that's why I'm kind of just questioning this -- the date of these pictures because I don't believe he ever kept it that clean.

(Nov. 12, 2019 Pl.'s Dep. Tr. at 31-32.)

{¶ 32} Our review of the evidence shows that a portion of the concrete slab is partially obscured by vegetation to the very left edge, but the deviation in height between the concrete slabs are clearly visible to anyone using the walkway. Anyone exercising a reasonable degree of caution when using the walkway would also perceive the slight increase in the deviation from the right side of the slab to the left edge and avoid the danger. In our view, it is not permissible to infer from any of the photographs, including Exhibit I,

---

A. As shown in Exhibit 3. (Feb. 4, 2020 Def.'s Dep. Tr. at 52.)

that the existence and extent of the defect in the walkway would not have been visible to appellant on September 14, 2017. Appellant has admitted that she was looking at her package as she traversed the walkway, and not looking down when she caught her toe and fell. Appellant has, therefore, presented no proof that the attendant circumstances exception to the two inch rule applies in this case.

{¶ 33} In the final analysis, we find that appellant failed to produce admissible evidence which, if believed, would permit a reasonable trier of fact to conclude that the deviation in height between the two concrete slabs in the walkway was two inches or more. Appellant has also failed to produce evidence to support a finding that attendant circumstances prevented her from perceiving the defect and avoiding the danger. Accordingly, we hold that the trial court did not err when it granted summary judgment in favor of appellee on appellant's common law negligence claim. Appellant's assignment of error is overruled as to her common law negligence claim.

**2. Negligence Per Se**

{¶ 34} Appellant argues that the concrete walkway over which she tripped and fell rendered the leased "premises" uninhabitable for purposes of liability under R.C. 5321.04(A)(2). Alternatively, appellant argues that the alleged defect in the concrete sidewalk rendered a "common area" unsafe for purposes of liability under R.C. 5321.04(A)(3).

{¶ 35} The Landlord-Tenant Act provides in pertinent part, as follows:

> (A) A landlord who is a party to a rental agreement shall do all of the following:
>
> * * *
>
> (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
>
> (3) Keep all common areas of the premises in a safe and sanitary condition.

R.C. 5321.04(A)(2) and (3).[5]

---

[5] By contrast, "[t]he 'open and obvious' doctrine does not dissolve the statutory duty to repair." *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 25, citing *Schoefield v. Beulah Rd, Inc*, 10th Dist. No. 98AP-1475 (Aug. 26, 1999).

{¶ 36} The Supreme Court has held violations of R.C. 5321.04(A)(2) and (A)(3) constitute negligence per se.  *Mann v. Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 2014-Ohio-455, ¶ 32.  Appellee contends that the provisions of the Landlord-Tenant Act do not apply in this case because the walkway where appellant fell was not located on the leased premises or in a common area for purposes of the Landlord-Tenant Act.  We agree with appellee.

{¶ 37} R.C. 5321.01(C) defines a "residential premises" as "a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant."  The term common area is not defined in the Landlord-Tenant Act.  Ordinarily "common area" is a term defined in written lease agreements.  A common area is defined in the common law as "the realty that all tenants may use though the landlord retains control over and responsibility for it."  *Black's Law Dictionary*, 332 (10th Ed.2014).  For example, a parking lot used by lessees is a "common area."  *Rawlings v. Springwood Apts. of Columbus, Ltd.*, 10th Dist. No. 18AP-359, 2018-Ohio-4845, ¶ 40, quoting *Lilly v. Bradford Invest. Co.*, 10th Dist. No. 06AP-1227, 2007-Ohio-2791, ¶ 24.

{¶ 38} There was no written lease agreement in this case.  Appellee testified that the leased premises included the lot located at 5838 Meadowbrook Road in Albany, Ohio.  The parties agree that appellee orally instructed appellant to use 5792 Meadowbrook Road as her address for purposes of mail service, and that she could pick up her mail at the mailbox across the street at that address.  There is no evidence that appellee told appellant that her rights under the oral lease agreement included use of the walkway leading to the back yard at 5792 Meadowbrook Road, for any purpose or at any time.

{¶ 39} Appellant testified about the arrangement as follows:

> Q. Was there a mailbox there? Or tell me how that worked.
>
> A. Okay. There was a mailbox, which is what the mail would get put into. But if we had a package, they would put the packages, a lot of times either by the corner of the house - - the person delivering the package, if it didn't fit in the mailbox, would put it by the corner of the home, or Kevin, his dad, Chuck, would bring it to us. But the majority of the time, Mike would go over to get it.

(Nov. 12, 2019 Pl.'s Dep. Tr. at 18.)[6]

{¶ 40} At her August 5, 2021 deposition appellant testified as follows:

> Q. That area of 5792 in the back was not specifically leased to you, was it?
>
> A. No. That was his father's. He set it up for us to pick up our mail over there, which I couldn't understand why, but --
>
> Q. I'm talking about the back of the house, that area, Patty.
>
> A. Leased? No.

(Aug. 5, 2021 Pl.'s Dep. Tr. at 12.)

{¶ 41} Appellee conceded appellant was not trespassing on September 14, 2017, but he insisted he never expected that anyone would use the walkway or the back yard, other than himself or his parents. Appellant admitted she had never used the walkway prior to her fall on September 14, 2017. Appellant had always picked up her mail at the mailbox by the road in front of the residence at 5792 Meadowbrook Road, and her larger packages were left at the front of the residence. On September 14, 2017, however, she observed a mail carrier leaving the back of the residence and she was told that a package had been left for her. She used the walkway leading to the back of the home, for the first time, in order to retrieve the package.

{¶ 42} In *Ryder v. McGlone's Rentals*, 3d Dist. No. 3-09-02, 2009-Ohio-2820, the tenant of a single family dwelling sued her landlord for negligence when she was injured in a fall that occurred on a public sidewalk adjoining the leased premises. The trial court granted summary judgment for the landlord upon finding the sidewalk was not located on the leased premises or in a common area. The court of appeals affirmed the trial court upon concluding that the "residential premises" as defined in R.C. 5321.04 did not include the public sidewalk because a "tenant," as defined in R.C. 5321.01, is a person entitled to use the premises "to the exclusion of others." (Emphasis deleted.) *Id.* at ¶ 21. The court of appeals held that the trial court did not err in granting judgment to the landlord because the there was no claim that tenant had the right to exclude others from using the sidewalk. *Id.*

---

[6] The evidence shows that Mike was also residing at 5838 Meadowbrook Road.

**{¶ 43}** Here, appellant has testified that the back yard at 5792 Meadowbrook Road was never part of the leased premises and there is no evidence that appellant had a right to exclude others from using it. She never testified that she had the right to unfettered use of the walkway leading to the back of the residence. Accordingly, on this record, the trial court did not err when it determined that appellant failed to produce evidence to support a finding that the walkway leading to the back of the home at 5792 Meadowbrook Road was either on the leased premises or in a common area. Furthermore, appellant's argument that the Landlord-Tenant Act applies to her case because 5792 Meadowbrook Road is her "legal address," was not an argument appellant made in this trial court and has been waived for purposes of appeal. (Appellant's Brief at 4.) *U.S. Specialty Ins. Co. v. Hoffman*, 10th Dist. No. 19AP-189, 2020-Ohio-4114, ¶ 15.

**{¶ 44}** Finally, even if appellant had produced evidence to support a finding that the walkway was on the leased premises or in a common area, we have determined that the trial court did not err when it applied the two inch rule in concluding that the defect was insubstantial, as a matter of law. Appellant has not cited, nor has this court discovered, any Ohio case holding that the two inch rule does not apply to claims brought pursuant to the Landlord-Tenant Act. *See Dabe v. M.K. Hufford Co.*, 2d Dist. No. 2022-CA-11, 2022-Ohio-2802, ¶ 60. The *Dabe* court concluded that even though a statutory violation means that a landlord is negligent per se, the landowner has not violated the statute, as a matter of law, if the defect is less than two inches and no attendant circumstances exist. *Id.*

**{¶ 45}** Based on the foregoing, we hold that the trial court did not err when it granted summary judgment for appellee on appellant's statutory claims.

## V. CONCLUSION

**{¶ 46}** Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER, P.J., and SADLER, J., concur.

_____