[Cite as *Scott v. Ohio Dept. of Rehab. & Corr.*, 2023-Ohio-1647.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Anthony A. Scott, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 22AP-387 |
| v. | : | (Ct. of Cl. No. 2020-00164JD) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on May 16, 2023

**On brief:** *Anthony A. Scott*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *Stacy Hannan*, for appellee.

APPEAL from the Court of Claims of Ohio

LELAND, J.

{¶ 1} Plaintiff-appellant, Anthony A. Scott, acting pro se, appeals from a judgment of the Court of Claims of Ohio holding in favor of defendant-appellee, the Ohio Department of Rehabilitation and Correction ("ODRC"), on appellant's defamation claim. For the reasons that follow, we affirm.

**I. Facts and Procedural History**

{¶ 2} Appellant, an inmate in the custody of ODRC, brought an action for defamation against ODRC arising out of an allegedly false accusation that appellant was involved with a drug distribution network, or "drug ring," at Noble Correctional Institution ("NCI"). Appellant alleged that because of the false accusation he was convicted of various rule violations by the internal Rules Infractions Board ("RIB") and, as a result, was

transferred to a "more dangerous prison" and has false charges on his prison record. (July 6, 2020 Am. Compl. at 2.)

{¶ 3} The Court of Claims held a trial on the matter before a magistrate on January 27, 2022. The magistrate issued a decision including findings of fact and conclusions of law. According to the magistrate's findings of fact, Jared McGilton, an NCI institutional inspector for 8 years responsible for conducting administrative investigations of criminal activity at NCI, commenced an investigation concerning drug activity at NCI at the end of 2015 or the beginning of 2016 involving approximately 8 to 12 inmates as suspects.

{¶ 4} McGilton testified that appellant was not the primary target of the investigation or what McGilton considered the "main facilitator[]." (Mag.'s Decision at 2.) However, McGilton learned from an informant that drugs were being "passed through the fence and 'Bama' in the chapel was picking them up." (Mag.'s Decision at 1.) According to McGilton, he gathered job descriptions of offenders at NCI and determined that appellant worked in the chapel at the time and is originally from Alabama. McGilton asserted that he then searched mail and "JPay communications" at the prison and determined that appellant was also known as Bama. (Mag.'s Decision at 2.) McGilton reviewed video surveillance of offenders moving in and out of recreation and noticed that appellant was meeting with many of the individuals involved in the investigation.

{¶ 5} McGilton also "informally spoke" with chapel staff and learned that at the back of the chapel there was an emergency door that could be opened by any individual on the inside of the chapel. (Mag.'s Decision at 2.) Immediately outside that emergency door is an outdoor visitation area, and the chapel and the outdoor visitation area are separated by a chain link fence. According to McGilton, when standing at the officer's desk, the emergency door is not visible: the officer's desk is located at the far-left corner of the chapel, about 40 to 50 feet away. McGilton determined that appellant "had access to the emergency door and had the opportunity to retrieve a package passed through the fence." (Mag.'s Decision at 2.)

{¶ 6} McGilton believed that appellant "would take the package to the staff restroom in the chapel and break the drugs down to distribute throughout the institution."

(Mag.'s Decision at 2.) However, McGilton was aware that appellant's job duties did not consist of cleaning the restroom in the chapel and conceded that he did not personally witness, nor did he have surveillance video of appellant performing any activities as described above.

{¶ 7} Based on his investigation, McGilton authored a conduct report stating appellant was one of multiple individuals operating an illegal drug conveyance network in NCI. The conduct report asserts appellant's role in the network was to retrieve packages of illegal drugs left by the exterior chapel door and then hide, repackage, and distribute the drugs for profit. The report also states appellant would launder the money through "Cashapp." (Mag.'s Decision at 3.) McGilton ultimately charged appellant with violations of rules 40, 45, and 60, recited by the magistrate as follows:

> Procuring or attempting to procure, unauthorized drugs, aiding, soliciting, or collaborating with another to procure unauthorized drugs or to introduce unauthorized drugs into a correctional facility; Dealing, conducting, facilitating, or participating in any transaction, occurring in whole or in part, within an institution, or involving an inmate, staff member or another for which payment of any kind is made, promised, or expected; Attempting to commit; aiding another in the commission of soliciting another to commit; or entering into an agreement with another to commit any of the above acts.

(Mag.'s Decision at 3.)

{¶ 8} According to McGilton, nine individuals were administratively charged for being involved in the network. McGilton admitted he never found drugs on any of the offenders. With respect to the claim in the conduct report that appellant would launder money, McGilton testified that at the time he wrote the statement, he had information connecting appellant to money laundering through Cashapp, but the evidence for that statement is no longer in his file. He conceded that the allegation may also have been intended for a different offender but testified that, regardless, the rule violation charges for appellant would not have changed. Overall, McGilton "believed his statements in the conduct report to be true when he wrote them[,]" and he "continue[d] to believe the statements in the conduct report to be true" at the time of trial. (Mag.'s Decision at 3-4.) Although McGilton believed the evidence supported the administrative charges, McGilton

personally did not believe the evidence collected supported a finding beyond a reasonable doubt to maintain a criminal conviction. None of the individuals he investigated were criminally charged.

{¶ 9} McGilton explained the process that occurs after a conduct report is issued. The report "is sent to a hearing officer who then sends it to the Rules Infraction Board (RIB)," a hearing is held, and RIB reviews the evidence and decides guilt. (Mag.'s Decision at 4.) "After the RIB decision, a security review is conducted by unit staff, and if an offender meets the criteria for a security change, the recommendation is sent to [ODRC's] central office for approval or disapproval and potential placement in a different institution." (Mag.'s Decision at 4.) An appeal of the RIB decision may be taken to the warden.

{¶ 10} According to McGilton, he provided his investigative file to RIB but he does not sit on RIB, participate in appellant's appeal to the warden (which was unsuccessful), or otherwise involve himself in the disciplinary proceedings. "McGilton testified that the RIB relied on confidential informant statements, but he could not explain why the RIB failed to indicate that it relied on confidential informant statements." (Mag.'s Decision at 4.)

{¶ 11} Regarding distribution of the conduct report, McGilton explained that "the conduct report is uploaded into [ODRC's] internal * * * portal, a tracking system for offenders" and that "[o]nce the conduct report is in the portal, any employee of [ODRC] can look up the administrative charges related to an offender"; anyone who accesses the file is tracked and recorded. (Mag.'s Decision at 4.) According to McGilton, inmates do not have access to the portal and McGilton did not show a copy of the conduct report to any inmates.

{¶ 12} The Chaplin at NCI, a corrections officer assigned to work security in the chapel, and appellant also testified at trial before the magistrate. The Chaplin confirmed appellant had worked in the chapel as a librarian for a few years, mainly stayed at the desk, and was not tasked with cleaning the staff restroom. The corrections officer testified that appellant usually worked in the afternoon beginning at 1:00 p.m. and recalled that appellant was the librarian and did not use the staff restroom in the chapel. According to appellant, he worked in the chapel at NCI for a couple of years and while there, "never had access to the staff restroom," which he asserted remained locked until a staff member unlocked it, and "never had access to" or "went out" the exterior chapel door. (Mag.'s

Decision at 5.) Appellant also contended he had never been called or known as "Bama." (Mag.'s Decision at 5.) Appellant acknowledged that the conviction for which he is incarcerated was for possession of drugs and drug trafficking.

{¶ 13} Based on the evidence submitted, the magistrate concluded that appellant failed to prove his claim of defamation. Specifically, the magistrate determined that although appellant for purposes of the decision established a prima facie case of defamation per se, ODRC established the conduct report is protected by qualified privilege, and appellant did not demonstrate, by clear and convincing evidence, actual malice to defeat the qualified privilege on the facts of this case. In doing so, the magistrate found McGilton testified credibly as to the genesis of the investigation, the evolution of the investigation, and its ultimate conclusion, which led McGilton to publish the statements in the conduct report.

{¶ 14} Appellant filed three objections to the magistrate's decision: (1) "The Magistrate Judge erred in its decision finding that the Defendant's [sic] was protected by qualified privilege"; (2) "The Magistrate Judge erred in its decision finding that the Plaintiff did not establish malice and that the Defendant did not published [sic] the conduct report with reckless disregard to its truth or falsity"; and (3) "The Magistrate Judge erred to the prejudice of the Plaintiff by bolstering the Defendant's credibility as to the evidence which ultimately caused the Magistrate to unfairly decided [sic] in the Defendant's favor." (Apr. 20, 2022 Objs. at 1, 7, 14.)

{¶ 15} The Court of Claims overruled appellant's objections and adopted the magistrate's decision as its own. In doing so, the Court of Claims first explained that it must accept the magistrate's finding of facts and limit its review to the magistrate's legal conclusions because appellant failed to provide a transcript of the evidence to support his objections or an affidavit of evidence as required by Civ.R. 53(D)(3)(b). The Court of Claims then determined that under the facts of this case there is "no basis to modify" the magistrate's conclusion that the accusations in the conduct report were protected by a qualified privilege, and that the magistrate appropriately applied the law in determining appellant failed to meet his burden in demonstrating ODRC acted with actual malice. (Jgmt. Entry at 3.) Therefore, "[a]ccepting the magistrate's findings of fact," the Court of

Claims held that the magistrate appropriately applied the law. (Jgmt. Entry at 5.) The Court of Claims accordingly rendered judgment in favor of ODRC.

## II. Assignments of Error

{¶ 16} Appellant assigns the following three assignments of error for our review:

> [I.] THE COURT OF CLAIMS ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO DISPOSE OF ALL OF PLAINTIFF'S TIMELY FILED OBJECTIONS PURSUANT TO OHIO CIV.R. 53(D)(4)(D) THEREBY DIVESTING THIS COURT OF ITS JURISDICTION.
>
> [II.] THE COURT OF CLAIMS ERRED WHEN IT OVERRULED THE PLAINTIFF'S FIRST OBJECTION FINDING THAT THE DEFENDANT WAS PROTECTED BY QUALIFIED PRIVILEGE.
>
> [III.] THE TRIAL COURT ERRED WHEN IT OVERRULED THE PLAINTIFF'S SECOND OBJECTION FINDING THAT THE PLAINTIFF FAILED TO SHOW MALICE ON THE CLAIM OF DEFAMATION.

## III. Analysis

{¶ 17} With his assignments of error, appellant essentially challenges two aspects of the Court of Claims' decision: (1) a procedural issue concerning whether the Court of Claims sufficiently addressed and ruled on his objections to the magistrate's decision; and (2) the merits of the Court of Claims holding in favor of ODRC on the defamation claim based on the conclusion that a qualified privilege protected the conduct report and appellant failed to show actual malice to defeat that privilege. For the reasons that follow, we disagree with appellant on both fronts, and instead hold that the Court of Claims issued a final, appealable order that properly held in favor of ODRC on the merits of appellant's defamation claim.

### A. First Assignment of Error – Court of Claims' Ruling on Objections under Civ.R. 53(D)(4)(d)

{¶ 18} In his first assignment of error, appellant asserts the Court of Claims erred and abused its discretion when it failed to dispose of each of his objections to the magistrate's decision, pursuant to Civ.R. 53(D)(4)(d), and that, as a result, this court does

not have jurisdiction over the appeal. As explained further below, because the Court of Claims did expressly overrule appellant's objections, adopt the magistrate's decision, and enter judgment, it is a final, appealable order and this court does have jurisdiction. Further, to the extent appellant argues the Court of Claims erred by inadequately addressing appellant's third objection (in essence requiring reversal rather than dismissal), such an error was harmless on the facts of this case since the third objection involved a credibility issue that could not be reviewed due to the lack of a transcript.

{¶ 19} The Ohio Constitution limits the jurisdiction of courts of appeal to the review of final orders. Article IV, Section 3(B)(2) of the Ohio Constitution. "If the order is not a final appealable order, we lack jurisdiction and must dismiss the appeal." *G. Scottco Invest. Co. v. Korleski*, 10th Dist. No. 10AP-582, 2011-Ohio-6656, ¶ 7.

{¶ 20} "Civ.R. 53(D)(4) governs action on a magistrate's decision and sets out a trial court's obligations when faced with objections to a magistrate's decision." *Community Properties of Ohio Mgt. v. Smith*, 10th Dist. No. 22AP-322, 2023-Ohio-540, ¶ 11. Pursuant to Civ.R. 53(D)(4)(d), "[i]f one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections." Further, "[i]n ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). "This rule imposes a mandatory duty on the court to dispose of a party's objections to a magistrate's report." *Drummond v. Drummond*, 10th Dist. No. 02AP-700, 2003-Ohio-587, ¶ 13. "[A]n appellate court may not address an appeal of a trial court's judgment when the trial court has failed to rule on properly filed objections." *Id.*

{¶ 21} Here, the judgment entry appealed by appellant states:

> Upon review of the record, the magistrate's decision and the objections, the court finds that the magistrate has properly determined the factual issues and appropriately applied the law. Therefore, the objections are OVERRULED and the court adopts the magistrate's decision and recommendation as its own, including findings of fact and conclusions of law therein. Judgment is rendered in favor of defendant.

(Emphasis sic.) (Jgmt. Entry at 5.) Preceding this statement, the trial court expressly analyzed appellant's first two objections (concerning qualified privilege and actual malice)

but did not comment specifically on the third objection (concerning McGilton's credibility). The Court of Claims' analysis of appellant's second and third objections incorporated the magistrate's determination that "McGilton credibly testified" on multiple matters. (Jgmt. Entry at 3, 4.)

{¶ 22} Appellant cites to *Drummond* for the proposition that no final, appealable order exists in this case. However, in *Drummond*, the trial court's determination that a final order did not yet exist was based on the fact the trial court had not ruled upon appellant's objections entirely. *Id*. at ¶ 12 (dismissing the appeal where the trial court adopted the magistrate's decision the same day it was issued and failed to rule on subsequently filed timely objections). *See also Korleski* at ¶ 9 (determining the appeal was taken from an order that was not a final and appealable where the trial court "did not consider or in any way reference the State's timely-filed objections to the magistrate's report"). The *Drummond* holding, and similar cases, thus do not cover the situation here where the Court of Claims expressly overruled appellant's objections, adopted the magistrate's decision, and rendered judgment but did not delineate a separate written analysis for one of the objections.

{¶ 23} A recent case from this court, *Ohio Dept. of Taxation v. Barney*, 10th Dist. No. 21AP-461, 2023-Ohio-636, ¶ 15, provides guidance in the context of a closer fact pattern to this case. *Barney* acknowledged that this court has "recognized an alternative to dismissal" in certain cases, explaining, " 'where the appellate court can identify some reference to the trial court's consideration of objections, appellate courts have found support for the notion that we should presume that a trial court has ruled on objections.' " *Id*., quoting *In re J.V.*, 10th Dist. No. 04AP-621, 2005-Ohio-4925, ¶ 23, citing *H.L.S. Bonding Co. v. Fox*, 10th Dist. No. 03AP-150, 2004-Ohio-547, ¶ 8-9 (presuming the trial court overruled appellant's objections where the trial court "reviewed" the parties' objections and modified the magistrate's decision); and *Shaffer v. Shaffer*, 109 Ohio App.3d 205, 212 (3d.Dist.1996) (presuming trial court overruled objections where the court had made a "cursory" reference to the objections).

{¶ 24} Considering this precedent, the court in *Barney* determined the judgment entry in that case left "little doubt" the appellant's objections were considered since the trial

court issued a judgment entry stating it adopted the magistrate's decision and " '*overrul[ed] objections*[,]' " the entry "evidence[d] consideration of appellant's objections[,]" and the trial court's key finding "effectively disposed of appellant's objections." (Emphasis sic.) *Id.* at ¶ 17. Nevertheless, the *Barney* court determined the entry in that case did not constitute a final, appealable order since the trial court failed to enter judgment. *Id.* at ¶ 20-21.

{¶ 25} Here, similar to *Barney*, the Court of Claims expressly overruled appellant's objections and adopted the magistrate's decision, and in doing so made a determination on the first two objections in favor of ODRC on the merits of the defamation claim that effectively disposed of appellant's third objection challenging McGilton's credibility. Further, unlike in *Barney*, the entry in this case entered judgment in favor of ODRC. Considering all the above, the Court of Claims' judgment is a final, appealable order and this court does have jurisdiction to review the appeal.

{¶ 26} Lastly, while the Court of Claims' judgment does enough to establish a final, appealable order, appellant's first assignment of error implicitly raises the issue of whether the Court of Claims committed a reversible error due to an insufficient analysis. Even if, for the sake of argument, appellant is correct that the Court of Claims erred by not providing an analysis for the third objection, such an error would be harmless on the facts of this case. Appellant's third objection asked the Court of Claims to assess the credibility of the evidence and reweigh the evidence—tasks the Court of Claims could not do given there was no transcript before them. *See Reid v. Shaffer*, 10th Dist. No. 19AP-765, 2020-Ohio-5448, ¶ 25 and cited cases ("[m]oreover, we have already found the substance of the objections were tied to factual findings in need of a transcript to review: appellate courts, including this one, have found that a trial court acts within its discretion in overruling or dismissing the objections"); *Martin v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 07AP-1006, 2008-Ohio-3166, ¶ 10 ("If a transcript is not provided, the trial court cannot make a credibility determination regarding the evidence presented to the magistrate, and is therefore required to accept the findings of fact and consider only whether the evidence supported the magistrate's findings.").

{¶ 27} Accordingly, for all the above stated reasons and on the facts of this case, appellant's first assignment of error is overruled.

**B. Second and Third Assignments of Error – Showings of Qualified Privilege and Actual Malice on the Defamation Claim**

{¶ 28} Appellant's second and third assignments of error challenge the Court of Claims' decision to overrule his objections challenging the magistrate's determination that ODRC prevailed on the merits of the defamation claim. For clarity of discussion, we will address the second and third assignments of error together.

{¶ 29} Generally, an appellate court reviews a trial court's adoption of a magistrate's decision for an abuse of discretion. *Smith* at ¶ 13, citing *McNeilan v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 10AP-472, 2011-Ohio-678, ¶ 19. However, our standard of review is even more limited where the trial court reviewing a magistrate's decision does not have the benefit of a transcript or affidavit. "On appeal of a judgment rendered without the benefit of a transcript or affidavit, an appellate court only considers whether the trial court correctly applied the law to the magistrate's factual findings." *Triplett v. Warren Corr. Inst.*, 10th Dist. No. 12AP-728, 2013-Ohio-2743, ¶ 13. Moreover, an appellate court is precluded from considering a transcript provided on appeal that the trial court did not have the opportunity to review before determining whether to adopt the magistrate's decision. *Ross v. Cockburn*, 10th Dist. No. 07AP-967, 2008-Ohio-3522, ¶ 6. Therefore, even though in this case appellant provided the transcript on appeal, we may not review it since it was not provided to the Court of Claims. Moreover, we are confined to determining whether the Court of Claims correctly applied the law to the magistrate's factual findings in holding ODRC established a qualified privilege to the defamation claim and appellant failed to defeat the qualified privilege by showing actual malice.

{¶ 30} "In Ohio, defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7 (1995). "If a claimant establishes a prima facie case of defamation, a defendant may then invoke a conditional or qualified privilege."

*Jackson* at ¶ 9. A qualified privilege can then be defeated by a clear and convincing showing that the communication was made with "actual malice." *A & B-Abell* at 11.

{¶ 31} Here, appellant first contends the Court of Claims erred when it overruled his objection challenging the magistrate's determination that the statements in the conduct report are protected by qualified privilege. The Supreme Court of Ohio in *Jackson* set out the essential elements of a conditionally or qualifiedly privileged communication as follows:

> (1) good faith,
>
> (2) an interest to be upheld,
>
> (3) a statement limited in its scope to this purpose, and
>
> (4) a proper occasion, and publication in a proper manner and to proper parties only.

*Jackson* at ¶ 9, citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 246 (1975).

{¶ 32} "The defense of qualified privilege is deeply rooted in public policy. It applies in a variety of situations where society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection." *A & B-Abell* at 8. "This affords some latitude for error, thereby promoting the free flow of information on an occasion worthy of protection." *Id.* at 9. "One type of interest protected by a qualified privilege is the public interest. The 'public interest' privilege 'involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public.' " *Id.*, quoting *Prosser & Keeton*, *on the Law of Torts*, Section 115, 830 (5th Ed.1984).

{¶ 33} Appellant argues in support of his second assignment of error the Court of Claims chose portions of the magistrate's decision in a manner that "unfairly characterized the evidence." (Appellant's Brief at 11.) Appellant contends a full view of the magistrate's findings of fact show: appellant established defamation per se; that McGilton conceded he did not personally witness or, despite the prevalence of security cameras, have surveillance video of appellant performing activities that could be associated with the drug ring; there was no evidence to corroborate the alleged informant's statement and no evidence of money laundering; and no testimony from chapel staff supporting McGilton's theory. In summary,

appellant argues "there was no evidence implicating [appellant's] involvement in th[e] drug ring which McGilton knew before publishing the written conduct report" and there was "undeniable evidence to the contrary." (Appellant's Brief at 14.) Appellant asserts that "McGilton's only interest was to implicate [appellant] no matter what" and improperly published the conduct report to a third party "knowing that the information therein was based on evidence known by McGilton to be false." (Appellant's Brief at 14.)

{¶ 34} Here, contrary to appellant's position, there is sufficient evidence to show McGilton made the allegation that appellant was a part of the drug ring in good faith to establish a qualified privilege. According to the magistrate's findings of fact, McGilton testified: he was investigating drug activity at NCI involving approximately 8 to 12 inmates as suspects; an informant stated drugs were passed though the fence and a person nicknamed "Bama" in the chapel would receive them; after investigating further McGilton determined appellant worked in the chapel, was originally from Alabama, and was known as "Bama"; video surveillance footage showed appellant was meeting with many of the individuals involved in the investigation; chapel staff told McGilton that an emergency door in the chapel could be opened from the inside and led to an outdoor visitation area separated by a chain link fence; when standing at the officer's desk the emergency door is not visible; appellant had access to the emergency door and the opportunity to receive a package through the fence; and that he believed statements in the conduct report implicating appellant in the drug ring were true when he wrote them although he did not think the findings supported a finding of beyond a reasonable doubt to support criminal charges. (Mag.'s Decision at 1-5.)

{¶ 35} The lack of direct evidence of appellant caught in the act (such as video surveillance footage) and presence of countervailing evidence (such as testimony undermining McGilton's theory that appellant hid and repackaged the drugs in the staff restroom) does not mean McGilton acted without good faith in making the conduct report considering the circumstantial evidence he collected through his investigation. Circumstantial evidence may possess "the same probative value as direct evidence." *State v. Ford*, 10th Dist. No. 16AP-282, 2016-Ohio-8350, ¶ 13. *State v. Stewart*, 10th Dist. No. 19AP-615, 2020-Ohio-5344, ¶ 50 (explaining that even under the higher legal standard

employed in criminal cases, circumstantial evidence may be sufficient to support a conviction). Moreover, the magistrate determined McGilton's testimony was credible and, as previously discussed, the Court of Claims was not able to second-guess that finding. *Martin* at ¶ 10 ("If a transcript is not provided, the trial court cannot make a credibility determination regarding the evidence presented to the magistrate.").

{¶ 36} We are not tasked with determining whether we believe appellant to be guilty or not guilty of the accusations made by McGilton but are limited to assessing whether the Court of Claims correctly applied the law to the magistrate's factual findings in determining McGilton's statements were made in good faith. Here, the evidence supports a good-faith finding. *See, e.g., Watley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 07AP-902, 2008-Ohio-3691, ¶ 31 (finding correction officer's statements to have been made in good faith where, according to the officer's affidavit, he filed the conduct report in accordance with his senses, knowledge, and experience as a correction officer, as part of his duty, on behalf of appellee, to maintain the safety and security of the prison, and because he believed that appellant had violated prison rules). Further, the statements in the conduct report were made in connection with McGilton's and ODRC's interest and duty in ensuring the safety and security of the institution, its prisoners, and its employees and were limited in publication to an appropriate internal portal. *Id.* at ¶ 30 ("Public policy concerns dictate that persons employed within the prison system, especially correction officers who are directly involved with the inmate population, be afforded a qualified privilege in reporting violations of prison rules in order to maintain the safety and security of the institution, its prisoners, and its employees.").

{¶ 37} Overall, the magistrate's findings of fact, accepted as true, support the Court of Claims' conclusion that ODRC established a qualified privilege, and appellant has not otherwise demonstrated the Court of Claims incorrectly applied the law to the magistrate's facts to demonstrate reversible error on the facts of this case. As a result, appellant's second assignment of error is overruled.

{¶ 38} Appellant next contends that the Court of Claims erred when it overruled his objection challenging the magistrate's determination that appellant failed to show actual malice to defeat the qualified privilege.

{¶ 39} To overcome a qualified privilege, the plaintiff must show by clear and convincing evidence that the disputed communication was made with "actual malice." *A & B-Abell* at 11. "In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank*, 60 Ohio St.3d 111 (1991), paragraph two of the syllabus. "The phrase 'reckless disregard' applies when a publisher of defamatory statements acts with a 'high degree of awareness of their probable falsity,' or when the publisher 'in fact entertained serious doubts as to the truth of his publication.' " (Internal citations omitted.) *Jackson* at ¶ 10.

{¶ 40} Conversely "[e]vidence that establishes, at best, the publisher 'should have known' of the alleged falsity of the statement is insufficient to establish actual malice" to defeat a qualified privilege. *Hill v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-88, 2021-Ohio-561, ¶ 19, quoting *Varanese v. Gall*, 35 Ohio St.3d 78, 82 (1988). Negligent actions do not demonstrate actual malice. *Hill*.

{¶ 41} Appellant argues that he succeeded in establishing actual malice by clear and convincing evidence. Appellant points to the magistrate's findings that: McGilton conceded that he did not personally witness or have surveillance video of appellant performing any of the activities McGilton suspected he engaged in as a member of the drug ring; McGilton admitted he was aware appellant's job duties did not consist of cleaning the restroom in the chapel; McGilton testified the evidence of money laundering was no longer in his file; and McGilton could not explain why RIB failed to indicate that the board had not relied on an informant's statement. In support of his argument, appellant cites to *Hill* at ¶ 15-18.

{¶ 42} Contrary to appellant's argument, *Hill* does not support reversal. *Hill*, similar to the instant case, involved an inmate-led defamation claim against ODRC based on statements McGilton made in a conduct report implicating the inmate in hiding and distributing drugs in the prison. The Court of Claims granted the motion for summary judgment filed by ODRC. In reviewing the inmate's appeal, this court determined the Court of Claims erred by disregarding the inmate's affidavit as self-serving, by finding appellant's affidavit was the only evidence relied on by the inmate to prove actual malice, by concluding McGilton submitted unrebutted affidavit testimony, and by failing to construe the evidence

in appellant's favor as it was required to do.  We then determined the summary judgment evidence pointed to by the inmate could support an inference that McGilton failed to have any evidentiary support for his charges against that inmate. Based on the summary judgment standard, we concluded the inmate had succeeded in creating a genuine issue of fact as to whether McGilton published the defamatory statements in the conduct report either with knowledge that the statements were false or with reckless disregard as to their truth or falsity to establish McGilton acted with actual malice.  Therefore, we sustained the inmate's assigned error and reversed and remanded the matter for further proceedings.

{¶ 43}  The instant case is distinguishable from *Hill*.  Our holding in *Hill* concerned only whether the inmate there provided enough evidence to avoid summary judgment in ODRC's favor on the issue of actual malice.  We did not, as appellant suggests, announce a bright-line rule governing reliance on informants and/or failing to have video surveillance footage as it relates to establishing actual malice in a defamation case.  Moreover, unlike in *Hill*, a trial was held in the instant case which produced testimony supporting the Court of Claims' holding that appellant failed to establish McGilton acted with actual malice.  The evidence garnered at trial as stated in the magistrate's findings of fact shows McGilton, while conducting a broader investigation into a prison drug ring, implicated appellant after cross referencing the information gained from the informant with information about appellant's job, nickname, and opportunity to commit the offenses.   McGilton testified he believed appellant to be a part of the drug ring at the time of the investigation and continued to believe this to be true at trial. Again, the magistrate's determination on McGilton's credibility on those points could not be reviewed by the Court of Claims' judge.  *Martin* at ¶ 10.  The lack of direct evidence of appellant conducting drug-related activities, or the possibility that McGilton was ultimately wrong, does not establish McGilton acted with actual malice in implicating appellant in the drug ring on this record. *See Ford* at ¶ 13; *Watley* at ¶ 33.  At most, appellant has pointed to evidence of possible negligence on McGilton's part, which falls short of establishing actual malice to defeat a qualified privilege in a defamation action.  *Hill* at ¶ 19; *Varanese* at 82.

{¶ 44}  Overall, the magistrate's findings of fact, accepted as true, do not show by clear and convincing evidence that McGilton acted with actual malice.  Appellant has not

demonstrated the Court of Claims incorrectly applied the law to the magistrate's facts in this case in finding appellant failed to establish actual malice to defeat ODRC's qualified privilege.

{¶ 45} Accordingly, appellant's second and third assignments of error are overruled.

**IV. Conclusion**

{¶ 46} Having overruled appellant's three assignments of error, the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

JAMISON and BOGGS, JJ., concur.

———————————